EASTERN DIST.
January, 1839.

JOURDAN ET AL.
vs.
BARRETT ET AL.

---

### JOURDAN ET AL. *vs.* BARRETT ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The act of Congress of the 20th May, 1820, grants the right of pre-emption to front proprietors, to purchase an equal quantity of land in their rear, and adjacent to their front tracts, not exceeding the same, and extending not more than 40 arpents in depth; provided notice is given and payment made, within two years; otherwise the right of pre-emption shall cease, and become void.

Where back concessions or rear lands are claimed by several adjacent front proprietors, situated in the bend of a river, the surveyor general is to divide and apportion them, in the most equitable manner, among such front proprietors as avail themselves of their privilege under this act, when by the converging of the side lines, there is not the full quantity for all the claimants.

But, where only one front proprietor claims the privilege, under the act of congress, to enter his back lands, in a bend of the river, by converging lines, he is entitled to his *full* quantity, and the surveyor general is bound to lay it off to him. This right was contingent, and the quantity liable to be reduced, so long as the act was in force, but it became absolute and vested on the expiration of the act, which could not be affected by a revival of the law, subsequently; nor by the operations of the surveyor general.

Such front proprietors as *neglected or failed to enter their back concessions*, before the expiration of the act, forfeited their right, and when the law was afterwards revived, it did not revive their rights, to the prejudice of the only purchaser, who had availed himself of the privilege.

The decision of the Secretary of the Treasury, approving the operations of the surveyor general, in making the apportionments among different claimants, is not conclusive upon the legal rights of the parties in a court of justice. The authority of the surveyor general to make this apportionment is confined to cases of conflict between *different claimants under the same act.*

This is a petitory action, by two plaintiffs, to recover from the defendant, to be taken from the sides of his tract of land, thirty-one and thirty-three superficial arpents of land, as parts of back concessions.

The plaintiff, Landry, is the front proprietor of six arpents on the river Mississippi, with the depth of forty. In virtue of the act of congress, of the 15th June, 1832, granting back concessions to front proprietors, he entered one hundred and fifty-four arpents, back of, and in the rear of his front tract, and complains that the defendant has taken illegal possession, and claims thirty-one superficial arpents of this tract.

Jourdan, the other plaintiff, is proprietor of eight arpents fronting on the Mississippi, with the ordinary depth. He entered two hundred and sixty-nine superficial arpents in his rear, under the pre-emption law of 1832, and now complains that the defendant has taken thirty-three superficial arpents of his back concession.

Both plaintiffs pray judgment for the respective pieces of land claimed by them, and damages.

EASTERN DIST.     The defendant is owner of a front tract of twenty-seven
January, 1839.  arpents, by the depth of forty, derived by several mesne con-
JOURDAN ET AL.  veyances from Michel D. Bringier; who, on the 13th April,
vs.      1822, purchased his back concession, consisting of five hun-
BARRETT ET AL.  dred and ten acres, from the United States, under the provi-
sions of the pre-emption law dated, the 11th May, 1820.

The front tracts of the parties litigant adjoin each other,
and are situated on a point or concave bend of the river, and
as the side lines, under the original titles of the front tracts,
have a course as nearly as possible at right angles with the
river, they necessarily converge, making the tracts narrower
in the rear than they were on the river. Bringier had his
back concession surveyed by Wilson, principal deputy sur-
veyor for the eastern district of Louisiana, and a plat thereof
returned to. the land office, the 17th December, 1822. It
gave the full quantity of five hundred and ten acres. There
was then no other adjacent lands entered under the law of
1820.

The defendant, Barrett, pleaded a general denial, and set
out his title, as purchaser from Le Roy Pope, who bought of
Wade Hampton, the immediate vendee of Michel D. Bringier,
to whom the land in controversy was sold by the United
States, and he was put in possession by Wilson, the principal
deputy surveyor of the United States for the eastern district
of Louisiana.

Hampton's heirs, being called in warranty, came in and
set out title on the part of the defendants at full length.
The facts of the case are fully given in the opinion of the
district judge.

" The acts of congress granting pre-emption rights to back
lands in Louisiana, under which this controversy arose, are
three. in number. The first was passed the 3d March, 1811,
the second on the 11th May, 1820, and the third on the 15th
June, 1832. The acts of 1811 and 1832, limited the time of
making entries of these lands to three years each ; and that
of 1820, to two years from its passage..

The act of 1820 revived the fifth section of the act of 1811.
But the act of 1832 does not refer to any previous law,

EASTERN DIST.
January, 1839.

JOURDAN ET AL.
vs.
BARRETT ET AL.

although copied verbatim from the fifth section of the act of 1811. The right of pre-emption conferred by each of these acts became void, if not exercised within the delay fixed by the terms of the act. Consequently, a purchase made after the 15th June, 1835, was too late to give the purchaser a title. But the receipt of the plaintiff, Landry, signed by the receiver of public moneys, for the eastern land district of Louisiana, is dated the 8th March, 1836. At that date his right of pre-emption had ceased to exist. In a petitory action no principle is better settled, than that the plaintiff must succeed by the strength of his own title, and not by the weakness of his adversary's.

As regards the plaintiff, Jourdan, his purchase was evidently made within time, and under the operation of the law of 1832. The thirty-three arpents claimed by him are adjacent to, and back of a tract confirmed to him by the United States.

Were these thirty-three arpents vacant lands at the time of Jourdan's purchase?

The government, no more than any other vendor, could give a better title than it possessed. If the land was already sold, the sale to Jourdan was an illegal one, tortious on the part of the government officers, and null as regarded third persons.

The warrantor of defendant, Bringier, purchased as already stated, on the 12th April, 1822, and within the period limited by the pre-emption law of 1820.

But it is contended, that there were two fatal irregularities in this purchase. 1st., the quantity of land purchased by Bringier, was greater than he was entitled to, under a proper construction of the pre-emption law in question.

2nd. That the purchase should have been preceded by a survey defining the boundaries.

1st. The counsel of plaintiffs have, throughout their argument upon this ground of objection, taken the ideas of a right and of a claim as synonymous. And the surveyor general of the United States for Louisiana, Mr. Williams, has evidently assumed the same premises, for in his township map

of the litigated and circumjacent lands, made in 1834, this officer has apportioned out to the several front proprietors, including plaintiffs and defendants, the whole of the lands, lying back of, and adjacent to their front tracts, on a prolongation of the extreme side lines of the converging tracts, to the depth of eighty acres from the river, or forty from the back limit of the front tracts. Such an apportionment, made in 1834, under the pre-emption law of 1832, evidently took for granted, that the rights of front proprietors who made no claims until the year 1832, were not prejudiced or divested by their neglect to enter their lands, under the pre-emption law of 1811 and 1820, the lands back of and adjacent to their front tracts.

In virtue of what law did the surveyor general, Williams, make this apportionment, in the year 1834? Avowedly in virtue of the act of 1832. See his evidence.

This act could not have been intended to control any but claims or purchases made under it. If in express terms, it had purported to regulate purchases made many years before, it would have been an *ex-post facto* law, and so far unconstitutional and void.

But Bringier, or his vendees, made most assuredly no claim for back lands, under the act of 1832. And yet, while his purchase of 510 acres is curtailed very considerably in favor of his neighbors, there are still some hundreds of acres allotted to him on this township map.

Here is a recognition by the surveyor general, of Bringier's having acquired the title of the United States to some lands back of, and adjacent to his front tract.

I look in vain for the source from which emanates this pretended authority, on the part of a surveyor of the public lands, or even of the secretary of the treasury, to deprive a man of his property.

A title once vested is clearly beyond his control: he can no more modify it, than he can take it away altogether. In the year 1822, Bringier made his purchase. By the terms of the act of congress, under which he bought, his purchase dated from the notice of his claim given to the register of the

'land office. This was done on the 12th April. All the neighboring front proprietors might have exercised the same rights of pre-emption up to the 11th May, of the same year. But what was the consequence if they did not? In the words of the statute, their rights of pre-emption ceased, and became void. The right of pre-emption was revived many years afterwards. But this revival did not and could not interfere with, modify or destroy rights vested in third persons, who had availed themselves of the previous pre-emption law while it existed, and had by greater diligence than their neighbors, secured the ownership of the back lands. This is conformable to the plainest principles of natural law; and the contrary doctrine could only have arisen from the confusion of ideas above mentioned, the confounding of a right with a claim.

The right under the act of 1832, was a right to enter vacant lands, and none other lands; that is to say, vacant at the date of that act. Governments, like individuals, can only rightfully dispose of what belongs to them; and the argument cannot for a moment be tolerated, that they are free to make a sale or partition of what they have already alienated.

2nd. This brings me to the consideration of the other argument against the defendants' title. It is contended, that the formalities required by law, not having been fulfilled, the sale to Bringier was a nullity.

No survey appears to have preceded the sale to Mr. Bringier.

Various laws have been quoted to prove that the sales of the public domain must invariably be preceded by a survey. See pages 349, 420, 456, 460, 482, 487, 570, 587, and 590, of the land laws.

There is no doubt, from an inspection of these laws, that all *public* sales of the lands of the United States must be preceded by surveys. These surveys are uniform in their character in each land district, starting from a basis meridian line, and continued east and west from such meridian, by ranges of townships, each of which townships is six English

miles square, and is divided into thirty sections or square miles, these last being again divisible into quarter sections. These general surveys must, according to one of the statutes, be carried on with sufficient despatch, to allow of twenty townships being offered for sale, twice a year in each land district. When the surveys have been returned in the general land office, the president of the United States issues his proclamation, ordering the sales to be made by public auction, and designating the time and place of such sale.

Now, the sale to the defendants' warrantor, Bringier, was a private sale, made in virtue of particular statutes, which must be viewed as deviations from the general system of land sales.

An act of congress, passed the 24th February, 1810, and found at page 570, of the land laws, declares, it is true, that every applicant for purchase at *private* sale at any of the land offices of the United States, shall produce to the register, a memorandum in writing, describing the tract in which he shall enter, by the proper number of the section, township and range, subscribing his name thereto. This act has been pressed on my consideration as decisive of the question. The memorandum given by Bringier to the register, did not describe the tract claimed by the proper number of the section, township and range, for one reason among others, that this was impossible, the township surveys not having been extended to that part of the country at the time. See the testimony of Samuel H. Harper, then register of the land office in this district, on this head.

But we must look to the act of 1811, and not to that of 24th February, 1810, for information respecting the formalities which it was necessary for Bringier to observe in his purchase or entry. If we find it differ from that of 1810, the latter as being the earlier statute, is *pro tanto* repealed.

The dispositions of the act of 1811 on this subject, are as follows: " Every person entitled to the benefit of this section (sect. 5,) shall, within three years after the date of this act, deliver to the register of the proper land office, a notice in writing, stating *the situation and extent* of the land he wishes

to purchase, and shall also make the payment, etc." Nothing
is here said about a description by the proper number of the
section, township, and range.   In the notice given by Brin-
gier, the situation and extent of the tract of land he wished
to purchase are given ; and where I find the requisitions of
the statute substantially complied with, there is the less
reason for holding the claimant to an impossibility.

It may, indeed, well be questioned, whether the act of
1810, could in any case be considered as applicable to pur-
chasers under the 5th section of the laws of 1811, revived
by the law of 1820.   That pre-emption law recognized a
mode of surveying, totally different and irreconcilable to
the township surveys.   The French and Spanish surveys in
Louisiana had no reference to a basis meridian line, by which
the position of every acre comprised in them, could be deter-
mined with mathematical exactness.   They referred to
natural boundaries, a water course for instance, and not to
imaginary lines.

The land measures are different ; the French arpent in the
one case ; the English acre in the other.   Each grant ran
its side lines for an arbitrary extent in depth, and at various
angles from the front line.   To prevent, indeed, the hopeless
confusion that would attend the attempt to blend two kinds
of surveys, so different in all their elements, the same statute
of 1811 in its second section, (page 587 of the land laws)
provides, that the principal deputy surveyors of the territory
of Orleans be authorized, in surveying public lands in said
territory, adjacent to a river, lake, creek, bayou, or water
course, to vary the mode of surveying heretofore prescribed
by law, so far as relates to the contents of the tracts, and
to the angles, and boundary lines : provided, that such
deviations from the ordinary mode of surveying, be made with
the approbation of, and in conformity to the general instruc-
tions, which may be given to that effect, by the surveyor of
the public lands south of Tennessee.   That the claims of
back lands, under the pre-emption right, given by the fifth
section of this law, were to be surveyed in a different plan to
the usual mode of surveying the United States lands, is obvi-

EASTERN DIST.
January, 1839.

JOURDAN ET AL.
vs.
BARRETT ET AL.
ous, from the expressions of the fifth section. " The princi-
pal deputy surveyor of each district shall be, and is hereby
authorized, under the superintendence of the surveyor of
the public lands south of the state of Tennessee, to cause to
be surveyed, the tracts claimed by virtue of this section."
What is it that the principal deputy is authorized to survey?
A township or a section of public lands? No: but a
vacant tract, back of, and adjacent to a confirmed French or
Spanish grant, not to exceed in dimensions the front tract,
nor to extend back more than forty arpents. Note the word
" arpents." It is certain that this measure is not used by
American surveyors, for the admeasurement of townships
and sections.

But it is contended, that even if it were not necessary for
Bringier to describe his claim by township, or get the situa-
tion and extent of it, required to be specified in the notice to
the register, it could only be ascertained by definite metes and
bounds, the result of the operations of a surveyor. I have
to come to a different conclusion. The purchase of each
claimant dates according to law, from the delivery of the
notice. Each proprietor interested had a right to deliver this
notice on the first day the law went into operation. The
right of such proprietor was not one whit impaired, if he
delivered this notice only on the last day the law was in
force. But suppose what is extremely probable, that in the
course of the two or three years that elapsed, between the
first and the last of these dates, every one of a dozen or
twenty confirmees on a concave bend of the river, and whose
side lines all converged towards a common centre, should
have notified the register of a claim for vacant land, back of
and adjacent to his front tract, and of equal extent to his
front tract. It is obvious, that each could not obtain his full
quantity. What was then to be done to settle so many con-
flicting claims of precisely equal rank? The act defines them
to be pursued with the utmost clearness. " In all cases
where by reason of bends in the river, lake, creek, bayou, or
water course, bordering on the tract, and of adjacent claims
of a similar nature, each claimant cannot obtain a tract equal

to the adjacent tract already owned by him, to divide the vacant land applicable to that object, between the several claimants in such manner as to him may appear most eligible." Who is to divide? The passage just quoted, is the second member of a sentence; and by reference to the first member, we find it to be the principal deputy surveyor of each district respectively, who is therein authorized, under the superintendence of the surveyor of the public lands south of the state of Tennessee, to cause to be surveyed the tracts claimed by virtue of this section; and, in all cases, are. The surveying and the dividing, being in such close juxtaposition, might evidently be in the case above supposed, included in one operation. There is nothing at least in the law which prohibits such postponement of the survey. The principal deputy surveyor is authorized (not commanded) to survey. Nor must such plat of survey, by the terms of the act, be filed with the register, on the delivery of the notice followed ·by the payment, which instantly divests the title of the United States.

Eastern Dist.
January, 1839.

Jourdan et al.
vs.
Barrett et al.

The facts connected with Bringier's survey are as follows:

The pre-emption act of 1820 expired, and the principal deputy surveyor of the eastern land district of Louisiana, Mr. Wilson, surveyed Bringier's purchase of 510 acres of vacant land, back of, and adjacent to his front tract, without its being necessary to exercise the discretionary powers vested in him by this act, inasmuch as the contingency did not happen for the exercise of those powers. There were no adjacent claims of a similar nature; and consequently, Bringier could, and did obtain his full quantity.

Wilson's plat of survey is dated the 17th December, 1822. It was not included in a township map, because there was no township survey of that neighborhood, until several years afterwards. In the years 1829 and 1830, the township within the limits of which this tract is situated was surveyed, and the township map was submitted to the surveyor of public lands south of the state of Tennessee. This map included the detached survey made in 1822, by Wilson, for Bringier, which survey was modified by the surveyor of public lands

EASTERN DIST.
January, 1839.
=======
JOURDAN ET AL.
vs.
BARRETT ET AL.

south of Tennessee, and Righter, the principal deputy surveyor for the eastern land district of Louisiana; and the map, so modified, was approved by the former officer, on the 9th March, 1832. What right these officers had to change the survey of Wilson, I will not here stop to inquire. The defendant has adopted the modification, and now claims under Righter's survey, which contains the same area as Wilson's, and was made in the spring of 1830. The plaintiffs contend, that when Mr. Fitz, the surveyor south of Tennessee, approved the map of Righter, he was without jurisdiction in Louisiana, the approval being dated in 1832, and the office of surveyor general for Louisiana having superseded that of principal deputy for the district east of the island of Orleans, on the 1st May, 1831.

By the testimony of Righter, it appears that his map was made and submitted to the surveyor south of Tennessee, and the modification of Bringier's survey, made at the suggestion of the latter, in the year 1830, while the office of principal deputy surveyor still existed, and the surveyor south of Tennessee still had a superintending power over surveys in that part of Louisiana.

It is not seen how an act of congress of 1831, can affect acts legally done before its passage. The report by the principal deputy surveyor had been made to his legal superior at the time. The field notes, and other necessary documents, had been transmitted to that legal superior; and I cannot admit that the power of the latter (whose office was not abolished by the act of 1831) of ratifying the acts thus legally under his cognizance, should be taken away by implication.

The surveyor general of the United States for Louisiana, has taken upon himself to treat the acts of his predecessors as nullities; and by a township map, approved in 1834, has made entire distribution of the back lands of the defendant, and his neighbors. This survey, though it appears to have met with the approbation of the commissioner of the land office, and the secretary of the treasury, I must reject as governing the rights of the parties herein, for the reasons already given by me.

The mature deliberation which I have given the subject, has brought my mind to the conclusion, that claims made under the pre-emption law of 1832, could not have a retrospective operation, so as to defeat or modify rights vested under the pre-emption law of 1820, long previously expired. That the principal deputy surveyor, Wilson, did not violate the law, in the survey made by him, of the back tracts of the White Hall plantation ; but, on the contrary, that the apportionment made by the surveyor general, Williams, of the lands in question, as vacant lands, was unauthorized by law, and a violation of the rights of the defendant.

It is, therefore, ordered, adjudged and decreed, that there be judgment in each of the present suits, for the defendant, Thomas Barrett, with costs.

From this judgment the plaintiffs appealed.

*Winchester, Taylor,* and *Ives,* for the plaintiffs.

1st. The appellants owned front tracts, and by reason of a bend in the river bordering on them, and of adjacent claims of a similar nature, could not obtain a tract equal in quantity to the tract already owned by them. The surveyor general caused them and the adjacent claims of a similar nature to be surveyed, and divided the land applicable to the object between them; and the appellants paid the price, obtained the receipts of the receiver of public moneys of the United States, and entered their back lands accordingly. They acquired all the title of the United States to these tracts. 4 *Martin, N. S.,* 260, 4 *Louisiana Reports,* 547.

2nd. The lands of the United States cannot be sold until they have been surveyed, in the manner provided by law, and the boundaries and contents of every distinct portion are determined. The officers of the government cannot sell to any individual at private sale, until he produces to the register a memorandum in writing, describing the tract which he shall enter by the proper number of the section, half section, or quarter, (as the case may be) and of township and range ;

EASTERN DIST.
*January,* 1839.

JOURDAN ET AL.
*vs.*
BARRETT ET AL.

EASTERN DIST.
January, 1859.

JOURDAN ET AL.
vs.
BARRETT ET AL.

and no sale is complete, nor does any title vest in the purchaser, until an entry of the tract is made in the office of the register of the land office, in the district where the land is situated. See *Land Laws*, 349, 456, 460, 484, 489, 587, 590, and 770.

3rd. The pretended purchase of Bringier from the United States, in 1822, in virtue of the provisions of the act of congress of 11th of May, 1820, under which the defendants claim, is invalid, and vested no title in him, since his application contained no legal statement or description, of the situation and extent of land he wished to purchase. There was no plat of the surveys of the tracts which front proprietors were entitled to purchase in virtue of that act, in that portion of the country in which the lands in question are situated ; and no entry of the tract claimed by defendants, or of any other back of the front tract owned by Bringier, was ever made by him.

4th. If the fact of payment, by Bringier, gave him title to any land back of, and adjacent to his front tract, it was only to such a portion as he was entitled to purchase, under a just and equitable construction of the act of congress. His front tract was at a point where the river made a bend, and the act made the quantity and location to which he was entitled, depend on the condition of survey and division by the surveying department. Until that condition was fulfilled, his right to any specific portion did not exist; the division is now made, and the tract Bringier was entitled to purchase, is represented in the surveys of the United States, on the township maps, and contains 218.94 superficial acres ; for in that case, as the act of congress made a part of his title, his right under it is to be determined by the words of the act, the intention of the government, and the manner in which the act has been executed. *Civil Code*, 1940, *No.* 4 *and* 1941 *to* 1954. 2 *Kent's Commentaries*, 620. 1 *Peters' Reports*, 667.

5th. The survey of Wilson was not approved by any officer, and is an individual survey without authority. The survey embraced in a township plat, which appears to have been approved by the surveyor general south of Tennessee,

can have no application to the defendant's case, and is with- <span style="float:right">EASTERN DIST.</span>
out force in the present controversy, inasmuch as no division <span style="float:right">*January*, 1839.</span>
of the back lands was made in conformity with the provisions <span style="float:right">JOURDAN ET AL.</span>
of the act, and the approval was not made by the proper offi- <span style="float:right">*vs.*</span>
cer; and if they had been approved by the proper officers, <span style="float:right">BARRETT ET AL.</span>
they could produce no effect upon the decision of the cause,
for the act itself determines the rights of the claimants, and
directs a survey and division of the land applicable to the
object to be made, in conformity to their rights. The sur-
veys are not in conformity to the right of Bringier under the
act; were made in error; and can have no effect upon the
title. 6 *Martin, N. S.,* 216. 1 *Martin, N. S.,* 457. 3
*Martin, N. S.,* 15.

6th. The decision of the officer to whom the United States
entrusted the power of dividing the lands in the present contro-
versy, between the claimants under the various acts, in virtue
of which front proprietors were entitled to a preference, in
becoming purchasers of the vacant tracts of land adja-
cent to, and back of their front tracts, and which has been
approved by the public functionaries to whom he is responsi-
ble, cannot be inquired into in courts of justice, and is final
between the parties. *Civil Code of* 1808, *page* 266, *article*
34. 8 *Martin, N. S.,* 645. 3 *Louisiana Reports,* 556.
3 *Peters,* 96.

*Preston, Peirce,* and *Brycé,* for the defendants.

*Preston* argued at length on behalf of Hampton's heirs,
who were called in warranty, and for the defendants gene-
rally. He maintained that Bringier, having entered his back
concession, under the act of congress, passed the 15th May,
1820, and paid the United States government before it
expired, acquired a complete and indefeasible title to his full
quantity, *which vested and became absolute* on the expiration
of the act; the plaintiffs having neglected and failed to make
their entries and purchases during the same time.

*Bullard, J.,* delivered the opinion of the court.

The plaintiffs assert title to different portions of land

EASTERN DIST.
January, 1839.

JOURDAN ET AL.
vs.
BARRETT ET AL.

possessed by the defendant, which they purchased of the United States, in virtue of the acts of congress granting to front proprietors the right of purchasing public lands back of, and adjacent to their front tracts. The evidence of title which they exhibit, to wit, certificates of purchase, and an apportionment of the lands among conflicting claimants, under the same acts of congress, under the superintendence of the surveying department, appears to us sufficient to authorize a judgment in their favor, unless the title of the defendant be older or better, or the plea of prescription which he sets up should be sustained. Our attention, therefore, must be directed principally to the title of the defendant.

The latter claims under Bringier, by several mesne conveyances, and the record shows that Bringier was the proprietor of a tract of land on the river Mississippi, having a front of about twenty-seven arpents, with the ordinary depth of forty, and was clearly of that class of persons who had a right under the pre-emption laws, to purchase, to a greater or less extent, the adjacent public land in the rear of their plantations. Under the act of 1820, to which we shall hereafter allude more particularly, Bringier did purchase a quantity of land in his rear, not exceeding the superficies of his front tract. This purchase embraces the *locus in quo*. Neither party has a patent, and in this respect both parties stand upon the same footing. The question, therefore, presented for our consideration is, whether Bringier purchased more land than he was entitled to under the act of 1820, in relation to the plaintiffs, who were also front proprietors, and, in consequence of a bend in the river, were entitled to purchase a part of the same land entered by Bringier. This renders it necessary to examine critically the acts of congress under which the parties claim.

The right of preference in question was first extended to the proprietors of front tracts by the 5th section of an act of congress passed in 1811, entitled "an act providing for the final adjustment of claims to lands, and for the sale of the public lands in the territories of Orleans and Louisaina, etc." This part of the statute expired by its own limitation in three

years, and was revived for two years by the act of May 11th, 1820, entitled "an act supplementary to the several acts for the adjustment of land claims in the state of Louisiana." It was twice afterwards revived for limited periods, in 1832 and 1835. Bringier purchased under the act of 1820, and the plaintiffs under those of 1832 and 1835, after a lapse of many years, during which no such law existed.

That act of congress accords to every owner of a front tract of land, " a preference in becoming purchaser of any vacant tract of land adjacent to and back of his own tract, not exceeding forty arpents in depth, nor in quantity of land that which is contained in his own tract." It is made the duty of the principal deputy surveyor of each district, "under the superintendence of the surveyor of public lands south of the State of Tennessee, to cause to be surveyed the *tracts claimed* by virtue of this section ;" and it provides, that he shall "in all cases where by reason of bends in the rivers, etc., etc., bordering on the tract, and of adjacent claims of a similar nature, each claimant cannot obtain a tract equal in quantity to the adjacent part already owned by him, to divide the vacant land applicable to that object between the *several claimants*, in such way as may appear to him most equitable." The same section, after providing for the manner of giving notice, and fixing the mode and time of payment, concludes by declaring, that "if any such person shall fail to deliver such notice within the said period of three years, or to make such payment or payments at the time above mentioned, the right of pre-emption shall cease, and become void, and the land may thereafter be purchased by any other person, in the same manner, and on the same terms, as are or may be provided by law for the sale of other public lands, etc."

The front tracts of all the parties to this suit are situated upon a point formed by a bend of the river, and the side lines converge in such a manner as that there is not sufficient land in the rear to give to each the quantity equal to that contained in his original tract. It is, therefore, clear that if all had purchased under the act of 1820, it would have become the duty of the surveying department to apportion the land

The act of congress of the 20th May, 1820, grants the right of pre-emption to front proprietors, to purchase an equal quantity of land in their rear, and adjacent to their front tract, not exceeding the same, and extending not more than forty arpents in depth ; provided, notice is given and payment made within three years; otherwise, the right of preemption shall cease and become void. Where back concessions or rear lands are claimed by several adjacent front proprietors, situated in the bend of a river, the surveyor general is to divide and apportion them in the most equitable manner among such front proprietors as avail themselves of their privilege under this act, when by the converging of the side lines, there is not the full quantity for all the claimants.

EASTERN DIST.
January, 1839.
──────────
JOURDAN ET AL.
vs.
BARRETT ET AL.
among them. But in point of fact, Bringier alone delivered his notice and made his purchase, during the existence of that act of congress, of a tract not exceeding the quantity contained in his front tract; and the question is whether the purchase of Bringier is to be curtailed, so as to allow to the plaintiffs their equitable proportion, they having given their notice and made payment, under a subsequent law, after an interval of more than ten years.

We may premise, that, in our opinion, the absence of patents can have no influence upon the rights of the parties in this case, but that those rights are to be determined by the rules which regulate the contract of sale. The sovereign having made an offer or proposition to sell, subject to certain conditions and restrictions, and that proposition having been accepted, and the terms as to payment of the price complied with, we have only to inquire whether the title thus acquired by Bringier became indefeasible and absolute, as soon as the law expired, when no other proprietor, whose pretensions might interfere with him, had thought proper to avail himself of the privilege proffered by the act of congress; and whether his title could be affected by the revival of the same law ten years afterwards. If Bringier's front tract had been situated on a straight part of the river, and the side lines parallel to each other, and he had been the only purchaser or claimant, there can be no question but that he would have acquired a good title, and it would have been the duty of the surveying department to lay it out according to the directions of the statute. Whatever may be the situation of the front tract, the owner has a right to purchase a quantity equal in superficies to his front tract, subject to the operations of the surveyor, if his neighbors, situated on the same point, avail themselves of the same privilege. When congress speaks of the front tract, they speak of the owner; but the surveyor is to act only on the *land claimed* under the law, and those who deliver a notice of their intention to accept the offer, are spoken of as *claimants*. If there be but one claimant, it is equally the duty of the surveyor to lay off the land purchased by him. We, therefore, consider the right of Bringier, as a

But where only one front proprietor claims the privilege under the act of congress to enter his back land, in a bend of the river, by converginglines, he is entitled to his *full* quantity, and the survey- or general is bound to lay it off to him. This right was con- tingent, and the

claimant under the act of congress, although contingent or defeasible during the existence of the law, while his neighbors had also a right to *claim* the privilege of the act, by complying with its conditions, as having become complete and vested by the expiration of the law. By suffering the law to expire without delivering their notice, the right on the part of the plaintiffs to purchase was forfeited, by the express terms of the act, and it is difficult to conceive how it could be afterwards revived to the prejudice of the defendant by any legislative authority, much less by the operations of the surveying department. But it is contended, that the last clause of the section reserved the land not claimed under the law, to be sold like other public lands, which was not and could not have been done in this case. To this it may be answered, that by that part of the section, not only did those who had not purchased within the time limited, forfeit their *right to buy*, but those who *had* purchased according to the terms of credit then allowed, and had failed to pay, forfeited the land itself. The last words, therefore, amount, according to our understanding of them, to a declaration that the lands thus purchased and not paid for, shall not only revert to the domain, but that they shall so revert *ipso facto*, by the nonpayment of the price, so completely as to be liable to sale or private entry. If it had been the intention of congress merely to declare that the privilege should cease with the law, and be forfeited, such expressions would have been unnecessary, if not absurd, because the land itself in the case supposed would never have ceased to belong to the domain, and a declaration that " the lands might thereafter be purchased by any other person in the same manner, and on the same terms as are or may be provided by law for the sale of other public lands," would have been, to say the least of it, a very idle declaration, inasmuch as the lands were already liable to be sold according to law.

But it is further urged, on the part of the appellants, that the public lands cannot be sold without a previous survey, and that the officers of the government are not authorized to sell to any individual at private sale, until he produces to the

EASTERN DIST.
*January*, 1839.

JOURDAN ET AL.
*vs.*
BARRETT ET AL.

quantity liable to be reduced, so long as the act was in force, but it became absolute and vested on the expiration of the act, which could not be affected by a revival of the law subsequently, nor by the operations of the surveyor general.

Such front proprietors as neglected or failed to enter their back concessions before the expiration of the act, forfeited their right, and when the law was afterwards revived, it did not revive their rights to the prejudice of the only purchaser, who had availed himself of the privilege.

EASTERN DIST.
January, 1839.

JOURDAN ET AL.
vs.
BARRETT ET AL.

register a memorandum describing the tract he wishes to purchase, by its legal subdivisions, and that no title can vest until this mode has been pursued. They cite the act of 1810, in support of this position.

Such is undoubtedly the general law which regulates the sale of the public lands. But the statute in question creates clearly an exception to that rule, by authorizing the sale of the back lands in tracts of different quantities, and irregular shapes, and which require to be surveyed and laid off after the sale. The act declares that the date of the purchase shall be the date of the notice, thereby clearly indicating that the title of the purchaser shall vest independently of any survey; and at the time of filing the notice, subject as we have already observed, to a reduction in quantity, in cases of other claimants, and an insufficiency of land for all.

It is again urged, that Bringier's application contained no legal statement or description of the situation and extent of land which he wished to purchase; that there was no plat of survey of the tracts which the front proprietors were entitled to purchase. In support of this position, we are referred to a decision of the Supreme Court of the United States, relative to the location or laying of land warrants in Kentucky, in which it was held that the calls must be so specific and precise, as to enable others to locate the adjacent vacant lands. In deciding in the case now before us, upon the sufficiency of Bringier's notice or application, we cannot look beyond the statute under which it was made, and by which it must be governed. No particular form is prescribed, much less does it require the exhibition of a survey. Any description which would show that the applicant or claimant is a front proprietor, and entitled to the benefit of the act, would in our opinion suffice.

It is lastly contended, that the decision of the surveyor general, whose duty it is to apportion the public lands among the different claimants under the pre-emption laws, approved by the public functionaries to whom he is responsible, cannot be inquired into in courts of justice, and is final between the parties; and it is shown that the operations of the surveyor

general, by which the purchase of Bringier has been restrict-
ed and curtailed, in order to give a portion of the land to the
plaintiffs, has been approved by the secretary of the treasury,
and the previous survey and location of his purchase by
Righter, a principal deputy surveyor, has been disregarded.
Such pretensions do not appear to have been entertained by
the treasury department; for in the report of the commis-
sioner of the general land office, which is approved by the
secretary, it is expressly conceded, that a decision of the trea-
sury department, adverse to Bringier, would not preclude him
from seeking a remedy in the courts. Indeed it appears to us
manifest, that the authority of the surveyor general to appor-
tion the lands under the statute, is confined to the cases of a
conflict between different claimants under the same law, and
that he, as well as the treasury department itself, is incompe-
tent to decide upon the validity of a title acquired by pur-
chase, or upon the only question which this case presents, to
wit : whether the plaintiffs, by neglecting to avail themselves
of the privilege offered by the act of congress, did not forfeit
all pretensions to the land, lying back of, and adjacent to the
plantation of Bringier, to an extent not exceeding that of
his front tract, and extending back forty arpents from his back
line. Congress itself is incompetent, under the constitution,
to destroy the vested right and title of a purchaser of the
public land ; and how can the surveyor general, under an
authority to apportion the land applicable to that object,
among several claimants under the same law, while the
extent of their purchase is yet doubtful and contingent,
assume to take any part of the land, purchased by Bringier,
under the act of 1820, and give it to the plaintiffs, who pur-
chased under the acts of 1832 and 1835 ? In the case of
Boatner vs. Ventris, upon which the appellants rely, it is true,
this court held, that the decision of the register and receiver
relative to the conflictions of certain donation claims in Flo-
rida was conclusive, because the act of congress constituted
them a tribunal for such purposes, with the power to decide
between the parties according to the circumstances of the
case, and the principles of justice. But in relation to that

*The decision of the secretary of the treasury approving the operations of the surveyor gene-ral in making the apportion-ment among dif-ferent claimants is not conclusive upon the legal rights of the par-ties in a court of justice. The authority of the surveyor gene-ral to make this apportionment is confined to cases of conflict between differ-ent claimants un-der the same act.*

EASTERN DIST. class of claims, the title did not vest until the patent issued,
January, 1839. and the donees under the government, were bound to take
CATLETT with all the conditions and limitations, which the donor
vs. thought proper to impose. But in cases of sale, it is totally
M'DONALD. different. If Bringier was a fair purchaser, under the act of
congress, his right does not depend upon the operations of a
surveyor, or the opinion of the treasury department, and cannot be modified or affected by any act of the vendor, although
that vendor may be the sovereign.

These views of the rights of the parties render it unnecessary to consider the question, whether Righter's survey was
properly sanctioned by the surveyor of the public lands south
of Tennessee, and whether the plea of prescription ought to
prevail.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be affirmed, with costs.