BARTON'S
EXECUTRIX
*vs.*
HEMPKIN.

---

## BARTON'S EXECUTRIX *vs.* HEMPKIN.

APPEAL FROM THE COURT OF THE SEVENTH DISTRICT, FOR THE PARISH OF

OUACHITA, THE JUDGE OF THE SIXTH PRESIDING.

Fractional townships fronting on water courses are surveyed in small tracts or lots of about 160 acres each, and numbered, but the lot or fractional section numbered 16, is not designated by law as school lands. It is only under the general laws, and where the township is surveyed in square sections that every 16th section is reserved as school land.

In fractional or irregular townships on water courses the secretary of the treasury is required by law to select and designate the school lands.

The chief clerk in the general land office, being designated by law to act as commissioner in case of vacancy, &c., he is therefore an officer known to the law, to be recognized as such and presumed to be acting in obedience to the law.

Registers and receivers are to decide on the facts and sufficiency of proof in cases of pre-emption when no fraud exists; but if they sell land excepted from or not subject to sale by law, their acts are void for want of authority.

The commissioner of the General Land Office may at least suspend if not annul titles granted by the register and receiver, until Congress or the courts can act thereon.

Thé mere statement of the commissioner of the General Land Office that he has cancelled a certificate of purchase given by the register, &c., is not an eviction which should rescind a sale between third persons.

This is an action to rescind the sale of certain *floats* or rights

to a quarter section of land. The plaintiff alleges that Liles
& Carrick being entitled to a pre-emption on quarter section
No. 8, township 19, &c., were entitled to *floating* rights of 80
acres each, by virtue of their settlement rights, to be *located*
*elsewhere*; that the defendant purchased them and had them
located on fractional section No. 16, in township 20, range No.
13, &c., which is contrary to law, every 16th section being re-
served for school lands.

The plaintiff further shows that her late husband purchased
said lots or *floats* so located for $3200, on which he paid $1184
and gave his notes for the balance.    That since said sale these
locations have been declared null by the acting commissioner
of the General Land Office, as having been illegally located
on school lands.    She prays that said sale, be rescinded, and
that the defendant be decreed to return the part of the price
paid, and that the notes be given up, &c.

The defendant pleaded the general issue; admitted the sale
of the floats as located by him, but avers the title and locations
are legal and good; he denies that they have been legally can-
celled or annulled; or that in fractional townships bordering on
water courses the 16th number or fractional section is reserved
for school lands.    He prays that the plaintiff's demand be re-
jected.

Upon these pleadings and issues the case was tried.

In this case the locations were made on the 16th section or
fractional section of a fractional township fronting on the Mis-
sissippi; and on the certificate of entry and purchase being sent
to the General Land Office at Washington, J. M. Moore, chief
clerk and acting commissioner of the General Land Office,
wrote a letter to the register and receiver of the Ouachita dis-
trict, cancelling the certificate on the ground that the location of
the *floats* or pre-emption rights had been made on school lands.
This is the main question involved in the case; whether this
section was by law reserved for school land and had the com-
missioner authority to cancel the certificate ?

WESTERN DIS.
October, 1841.

BARTON'S
EXECUTRIX
vs.
HEMPKIN.

There was judgment for the defendant and the plaintiff appealed.

*Downs,* for the plaintiff.

*M' Guire* for the defendant.

*Garland, J.* delivered the opinion of the court.

This is an action to recover the sum of $1000, which it is alleged the defendant received from the testator of the plaintiff, on account of the sale of a tract of land, to which the latter had no title.

It appears the defendant was the owner of two claims of about 80 acres each, commonly called *floats*; he located them on the lot or fractional section No. 16, in township 20, north range 13 east, which is a fractional township. He paid the money to the receiver of the public monies at Ouachita, who gave a receipt for the same, which would entitle the holders or assignees to a patent for the land, if all the proceedings had have been legal and regular. This receipt was assigned to Barton at defendant's request, by the original pre-emptors, Liles & Carrick, for which Barton gave defendant his notes for $3295 98, payable at different dates, upon which $1000 have been paid. Barton took possesion of the land and has held it ever since, without any actual disturbance, so far as we are informed. This receipt was sent to the General Land Office to obtain a patent, in reply to which application, J. M. Moore, acting commissioner, states in a letter addressed to the register and receiver at Ouachita, that, " the *floats* being located on section 16, which is land reserved by law for the use of schools, I have cancelled the certificate." He then proceeds to direct the officers to return to the parties, the money paid by them for the land. This has not been paid, nor has any further step been taken in the matter. The land in the fractional townships fronting on the Mississippi, was in compliance with the acts of Congress; 1 Land Laws, p. 576, 587 ; surveyed in tracts of

WESTERN DIS. October, 1841.

BARTON'S EXECUTRIX vs. HEMPKIN.

Fractional townships fronting on water courses are surveyed in small tracts or lots of about 160 acres each, and numbered; but the lot or fractional section numbered 16, is not designated by law as school lands. It is only under the general laws, and where the township is surveyed in square sections that every 16th section is reserved as school land.

In fractional or irregular townships on water courses the secretary of the treasury is required by law to select and designate the school lands.

58 poles front by 465 poles in depth, containing about 160 superficial acres. One of these lots was numbered 16, and the acting commissioner of the General Land Office says, it is reserved for the use of schools in that township. That it is not exempted from sale under the general laws reserving the 16th section in every *township* from sale for the use of schools, is certain ; for they apply to whole townships, and probably to those surveyed in square sections only.

The plaintiff says the title has been annulled, and if this lot is not reserved under the general law, her counsel say it has been selected under the act of Congress of May 20th, 1826, entitled " an act to appropriate lands for the support of schools in certain townships and fractional townships, not before provided for ;" 1 Land Laws, 912. The second section of this act directs the secretary of the treasury in the cases provided for in the first section, to select certain quantities of land for the use of schools. In obedience to this law, the commissioner of the General Land Office by a general circular dated May 24th, 1826 ; 2d vol. Opinions and Instructions relative to Public Land, p. 395 ; directed the different registers of the Land Offices to cause selections to be made of the land to which each township or fractional township was entitled and to forward a list of such selections (designating numbers, &c.,) as should be made, to him, to be submitted to the secretary of the treasury for his approbation. In this case it does not appear that any such selections or lists have been made and forwarded for approval, or that the lot in question was ever selected under the act of Congress. It was not reserved from sale unless selected under the law, and the commissioner does not say it was. From the expression he uses in his letter, we infer it was not, though there is no certainty about it.

The annulling of the certificate by the acting commissioner of the General Land Office, the plaintiff says is an eviction and entitles her to demand a rescission of the sale and a judgment for the $1000, and a return of the out-standing notes. The defendant's counsel denies the sale and certificate is void

WESTERN DIS.
October, 1841.

BARTON'S
EXECUTRIX
vs.
HEMPKIN.

and annulled, and further denies the power of the acting commissioner of the General Land Office to cancel and annul it. He also denies the authority of Mr. Moore to act in the matter.

The act of Congress of the 4th of July, 1836, reorganizing the General Land Office, gives the commissioner a general supervision and control in relation to all public and private land claims, sales and patents, under the direction of the President of the United States; 1 vol. Laws, Opinions and Instructions relating to Public Lands, p. 552, sec. 1. The same authority was invested by previous laws; 1 Land Laws, 609. The second section of the above recited act, says, the President with the assent of the Senate, shall appoint two subordinate officers, one of whom is the principal clerk of the public lands and the other the principal clerk of private land claims, and in case of vacancy in the office of commissioner, or the sickness or absence of that officer, his duties shall be performed *ad interim*, by the principal clerk of the public lands. He is therefore an officer known to the law, and we are bound to recognize him and presume he is acting in obedience to the law. The supervision which the President has under the act reorganizing the General Land Office he charged the secretary of the treasury with, by a special order, dated on the same day the law was approved; 2 vol. Opinions and Instructions, 103, 104; so that all the operations of the General Land Office are under the immediate supervision of the secretary of the treasury, subject to the supervision of the President, whose duty it is, to see the laws are faithfully executed.

The 7th section of the act directs how documents and papers are to be certified under seal, to be used as evidence in courts of justice.

On the trial of this cause the defendant objected to the introduction as evidence of the letter of the acting commissioner of the general land office, on the grounds that no such officer was known to the law, and that he was not vested with power to cancel the certificate in question, the decision of the regis-

*The chief clerk in the General Land Office, being designated by law to act as commissioner in case of vacancy, &c., he is therefore an officer known to the law, to be recognized as such and presumed to be acting in obedience to the law.*

ter and receiver being final in the matter. The objections were overruled, and we believe correctly, though there was another objection which, if taken, might have been more serious. The District Judge correctly held the acting commissioner was an officer known to the law, and that the second objection went to the effect of the evidence.

Registers and receivers are the judges of the facts in cases of pre-emptions, so far as to decide upon the sufficiency of the proof, where no fraud exists, or is alleged, but if they sell land excepted from or not subject to sale by law, their acts are void for want of authority, and the commissioner of the general land office may at least suspend, if not annul titles granted by them, until congress or the courts can act on them. 2 Opinions and Instructions, 39, 84, 140, 214; 13 Peters 498; 13 La. Rep. 24; 11 Idem 587; Guidry vs. Woods, *ante*, 334. If the evidence were before us, that the lot of land in question was reserved from sale for the use of schools under the general laws, or the particular provisions of the act of congress of May 20, 1826, we should not hesitate to decide upon it; but we do not think the mere letter of the commissioner of the general land office is sufficient. We wish to see whether this lot was selected by the register of the land office; at what time and in what manner the selection was made, and approved by the secretary of the treasury.

We do not consider the mere statement of the commissioner of the general land office, that he has cancelled a certificate, an eviction which should rescind a sale between third persons. The United States has not disturbed the plaintiff in the possession of the land, the purchase money has not been yet refunded, and the act by no means complete. It may be, there will be no disturbance, and it is possible that congress, upon a representation of the facts, and proof of the good faith of the parties, would pass an act affirming the sale. Many similar purchases have been ratified, as the journals and acts of that branch of the government will show. This court have on various occasions decided that acts and proceedings much

The commissioner of the general land office may at least suspend, if not annul titles granted by the register and receiver, until congress or the courts can act on them. The mere statement of the commissioner of the general land office, that he has cancelled a certificate of purchase given by the register, &c., is not an eviction, which should rescind a sale between third persons.

more potent than the act alleged in this case, did not amount to an eviction. 7 Martin N. S. 272; 3 La. Rep. 490; 3 Martin N. S. 111; 1 Idem 475; 8 Idem 330; 7 Idem 96; 16 La. Rep. 501.

The case in 17 La. Rep. 446; differs from this in a very important point. The plaintiff in that case only sold his *pretensions* to a tract of land, which both parties knew at the time did not belong to him, the legal and equitable title being in the United States: but in the present case, the officers of the United States have given such a certificate as to show a *prima facie* title out of the government; 10 La. Rep. 159; 11 Idem 322; and such as would have entitled the party to a patent, but for some intervening obstacle. In the first case no title passed, in this, there is a title which is perhaps void, but we cannot take the mere *ipse dixit* of the commissioner of the general land office that it is so.

In this case there is a final judgment for the defendant upon the verdict of the jury, which we think incorrect. The plaintiff has not made out such a case as will entitle her to recover, but we think the door should be left open to a further investigation of the matter. The action is premature, but the judgment should not be final.

The judgment of the District Court is therefore annulled and reversed, the verdict of the jury set aside, and a judgment of non-suit rendered against the plaintiff with costs in both courts.