## EBENEZER EATON KITTRIDGE *v.* GODFROI BREAUD.

Under the seventh sect. of the act of Congress of 11th May, 1820, reviving sect. 5 of the act of 3d March, 1811, authorizing the owner of any tract of land bordering on a water course in the territory of Orleans, to purchase, by preference, any vacant land in the rear of, and adjacent to his tract, not exceeding a certain quantity, plaintiff, whose front tract had not then been surveyed, purchased, a few days before the expiration of the act, the quantity of land which he supposed himself entitled to claim. The seventh sect. of the act of 1820, having been revived and continued in force for eighteen months, by sect. 1 of the act of 28th of Feb., 1823, *and plaintiff,* having within that time discovered that he had not entered as much land as he was entitled to, applied for, and purchased the additional quantity, a survey of which, by a surveyor of the United States, approved by the principal deputy surveyor in the district, was deposited in the Surveyor General's office. When the public lands were surveyed, long after plaintiff's purchases, the surveyors marked the first purchase on the township plats, but omitted the second, so that the land embraced by it appeared to be public; in consequence of this omission, defendant, a settler on the public lands, purchased a portion of the land included in plaintiff's second purchase, under the act of 19th June, 1834, granting pre-emption rights. *Held,* that having omitted, through error, to purchase, at first, the whole quantity of land to which he was entitled, and having availed himself of the discovery of his error, in a short time afterwards, and before any one had taken advantage of it, or

acquired any right to the land, plaintiff was entitled to purchase the additional quantity ; and that the operations of the surveyors should not be allowed to take from, nor add to the rights and claims of individuals, when recognized by the proper officers of the United States.

Arts. 2242 and 2417 of the Civil Code, which provide that a sale of immoveable property shall have effect against third persons, only from the day when it was registered in the office of a notary, and the actual delivery of the thing took place, do not apply to titles derived from the United States, which has offices of its own for the disposition of its domain, and for the preservation of the records of whatever is done in relation thereto.

APPEAL from the District Court of Assumption, *Deblieux*, J.

GARLAND, J.   The plaintiff alleges that André Le Blanc, his vendor, being the owner of a front tract of land on the bayou Lafourche, having five *arpens* front, by forty in depth, did, on the 8th of May, 1822, and the 28th of August, 1824, enter at the Land Office in New Orleans a quantity of land equal to his front tract, under the acts of Congress of the 11th of May, 1820, and the 28th of February, 1823, which authorized front proprietors in this State to enter, at the *minimum* price, a quantity equal to that contained in their front tracts.   These entries, he alleges, were legally surveyed and located, by the proper officers   He avers that the defendant has illegally taken possession of $71\frac{43}{100}$ acres, comprised within the entry of $91\frac{63}{100}$ acres, made on the 28th of August, 1824, and that he asserts title to the same.   The commission of various trespasses and acts of waste is stated, and a judgment for the land, and $2000 damages, is prayed for.

The defendant alleges that he is the owner of a tract of land of 114 acres, more or less, which he purchased from the United States, at the Land Office in New Orleans, on the 5th of May, 1835, which he has ever since owned and possessed.   He further declares, that he has made improvements on said land, to the value of $3000, in good faith, believing himself to be the owner and rightful possessor.   He asks to be quieted in his title and possession ; but in the event of eviction, prays to be paid for his improvements and expenses.

On the 3d of March, 1811, Congress passed an act, the fifth section of which authorized every owner of a tract of land in Louisiana, fronting on a water course, to purchase an equal quantity of vacant land in the rear of, and adjacent to, the front tract;

which privilege continued to exist for three years.   1 Land Laws, 588, sec. 5.   On the 11th of May, 1820, this section of the act of 1811 was revived for the term of two years.   Ibid. 779, sec. 7.   Under this act, André Le Blanc, on the 5th of May, 1822, became the purchaser of 200 acres, at the Land Office in New Orleans, situated in the rear of his front tract.   It does not appear that this tract was surveyed or located until April 9th, 1829.   On the 28th of February, 1823, Congress passed an act reviving and continuing in full force and effect, for the term of eighteen months, the 7th section of the act of May 11th, 1820.   Ibid. 835, sec. 1.   On the 15th of May, 1823, Le Blanc requested Bonnet, a surveyor of the United States, to survey for him a further quantity of $91\frac{63}{100}$ acres, which he claimed as a pre-emption under the last acts of Congress, being in the rear of his front tract.   This survey was approved by J. Wilson, Principal Deputy Surveyor in the Land District.

On the 19th of March, 1824, André Le Blanc addressed a letter to the Principal Deputy Surveyor of the South Eastern Land District, requesting him to have surveyed such vacant land as might be found applicable to his pre-emption right, adjacent to, and in the rear of his tract of five *arpens* front on the Lafourche, which he says is $91\frac{63}{100}$ acres, being the completion of his back concession, purchased under the act of Congress of May 11th, 1820.   What was done in consequence of this application, does not appear, but on the 28th of August, 1824, Le Blanc applied to the Register of the Land Office in New Orleans, to purchase this $91\frac{63}{100}$ acres, as being necessary to complete the quantity contained in his front tract, which privilege was accorded him, and he paid for the same, and took out a regular certificate of purchase.   No further survey or location of this land was made until May 20th, 1836, when a regular survey was made, and approved by the Surveyor General on the 4th of May, 1837.   The front tract and the back lands, are now vested in the plaintiff.

When the aforesaid entries were made, the public lands in that section of country were not surveyed, nor were many of the private claims finally located and measured.   The plaintiff says that Le Blanc's front tract of five *arpens* front, in consequence of the opening of the lines, contained more than two hundred superficial

Kittridge v. Breaud.

*arpens*, which fact was not known when the first entry was made, but was ascertained afterwards, and that the second entry or purchase of $91\frac{63}{100}$ acres was allowed and made, for the purpose of making up the quantity to which he (Le Blanc) was legally entitled. The plat shows that the lines open very considerably, and it is certain that the front tract contained more than two hundred acres, and it is probable that this was the reason of permitting the second entry.

When the public lands were surveyed, long after Le Blanc's purchases, the United States' Surveyors only represented the first one on the township plats, although the survey of Bonnet was in the Surveyor General's office, in consequence of which, the $91\frac{63}{100}$ acres appeared to be public land, and the defendant on the 5th of May, 1835, purchased $71\frac{43}{100}$ acres of it, with other land adjoining, as a pre-emption right, under the act of Congress of the 19th of June, 1834, granting that privilege to settlers on the public domain, and a certificate was given to him in conformity to law.

On the trial, in addition to the foregoing facts, it appeared that the defendant settled on the land about the year 1830, not setting up any title to it then, nor does it appear that he ever was disturbed by Le Blanc; but there was an old boundary post standing, which included the land possessed by the defendant within the claim of the plaintiff. But there is no evidence to show that any complaint was ever made by Le Blanc or the defendant, of any interference between their rights, until the plaintiff purchased.

The District Court, in conformity with the verdict of a jury,* gave a judgment in favor of the defendant, from which the plaintiff has appealed.

*Connely*, for the appellant.

*Miles Taylor*, for the appellee. Plaintiff's vendor was not entitled to any right of pre-emption by the act of 1823. 1 Land Laws, 588, 777, 835. No legal entry had been made by him, nor had the title of the United States been divested. Ib. 456, 457, 458, 460, 461, 570, 588, § 4, and 586. 2 Ib. 295. Civ. Code, arts. 2451, 2453,

---

* This was the second jury that had found a verdict in favor of the defendant.— REPORTER.

2456. *Jourdan* v. *Barrett*, 13 La. 24. The laws of the United States in relation to the public lands, only determine when, and how they are to be sold, leaving the rights of individuals under them to those of the state in which they are situated. *Wilcox* v. *Jackson*, 13 Peters, 557. Civ. Code, arts. 9, 10.

GARLAND, J. The defendant contends that André Le Blanc was not entitled to any right of pre-emption under the act of February, 1823, and that he was improperly allowed to purchase the $91\frac{63}{100}$ acres of land surveyed for him in 1836, as he had availed himself of the act of May 11th, 1820, and that, not having purchased the full quantity to which he was entitled, he must be presumed to have abandoned his right to enter more than the two hundred acres, as soon as the act expired; and that no errors could then be rectified, as the privilege itself had expired. To this the plaintiff replies, that Le Blanc had a right to enter as much land in the rear as he had in his front tract; and as no survey had been made, an error was produced in the first purchase, which should not prejudice his rights. He further says, that the act of February 28th, 1823, was a revival and continuation of the act of May 11th, 1820, and both are to be considered as one law, and the right of Le Blanc goes back to the latter date, and that having acquired a title by paying the price of the land, no subsequent action of the government or neglect of its officers can divest him of it.

Upon this point we are disposed to coincide with the plaintiff. We think it is sufficiently shown by the first purchase, that Le Blanc looked more to the front and depth of his land to ascertain the superficial quantity, than he did to the direction of his side lines. His purchase was made only three days before the expiration of the act of May 11th, 1820, when very *little time* remained to correct any errors; and we find him very soon after the act of February 28th, 1823, was known, taking the necessary measures to ascertain the quantity of land he had omitted to enter in the first instance, and finally purchasing it, before any one had availed themselves of his error, or obtained any rights upon it. Le Blanc had done all in his power to secure the land for himself, which he unquestionably had a right to enter originally. He had had a survey made of the land included in his second purchase, which was returned to and approved by the Principal Deputy Surveyor of

the district, and remained in his office until the office of Surveyor General was created, where it is still on file. The Register and Receiver of Public Moneys had the evidence of his right; and there never would have been any difficulty about his title, had the United States surveyors and officers performed their duties properly, and represented both purchases upon the township plat, as should have been done, instead of making one of them appear as public land. In 6 Mart. N. S. 216, 217, this court said, "the operations of surveyors ought not to be allowed to derogate from or add to the rights and claims of individuals to land, when recognized by the proper officers of the United States." Their action cannot, therefore, impair the right of the plaintiff.

The defendant's counsel contends that no legal entry of the land was ever made by André Le Blanc, and the title of the United States was never vested in him, as there was no delivery of the property. To this proposition we cannot yield our assent. The survey made by Bonnet in 1823, and approved by the Principal Deputy Surveyor of the district, specifies the metes and bounds. The land seems to have been purchased in conformity with it, and the delivery and putting in possession was therefore as perfect as in any other purchase from the United States.

On the defendant's third point it is sufficient to remark, that the land seems to have been sold to Le Blanc in conformity to law, there not being at the time any adverse claim or right. What effect might have been produced, if, in the interim between May the 8th, 1822, and the 28th of August, 1824, the defendant had settled upon and acquired any right to the land in controversy, it is unnecessary to determine, as no such right is pretended to exist. The defendant never was on the land until six years after Le Blanc's purchase, and had neither an equitable nor legal claim for near ten years, admitting it to have continued to be the property of the United States.

The last ground taken by the defendant's counsel is, that his client purchased in good faith, without actual or constructive notice of the existence of Le Blanc's claim, and that he ought to be protected in the enjoyment of the land. To sustain this view, the counsel relies upon the articles 2242 and 2417 of the Civil Code, which provide, that all sales of immoveable property, to

have effect against third persons, must be recorded in the parish where the property is situated. We are of opinion that titles derived from the United States do not stand precisely in the same category with sales made by individuals or ordinary corporations. That government has offices for the purpose of disposing of its domain, and they contain the public records of all that is done in relation to its disposition. All sales are recorded, or should be recorded, in those offices, and there the necessary information can be obtained in relation to any piece of land that a party may wish to purchase. It is shown, in this instance, that if the defendant had used due diligence, he might have ascertained the purchase of André Le Blanc, as the evidence was in the Surveyor General's office, and on the books of both the Register of the Land Office and of the Receiver of Public Moneys in New Orleans ; and the error which has produced the whole difficulty, rests with the surveying department in not representing this land as sold, when it in fact had been so disposed of. Had this appeared on the township maps, the defendant never could have purchased. That this was unintentional, is evident from the fact, that in 1837, nearly two years after defendant's purchase, the Surveyor General caused the whole claim of Le Blanc to be located and surveyed according to his purchases, and approved the same.

With these views of the case, we are of opinion the court and jury erred in giving a verdict and judgment for the defendant; but as the whole case is not before us in such a shape as to enable us to do justice to all parties, we shall remand it for a new trial.

The judgment of the District Court is therefore reversed, the verdict of the jury set aside, and the cause remanded for a new trial, with directions to the judge to conform in the trial thereof to the prinicples herein expressed, and otherwise to proceed according to law ; the appellee paying the costs of this appeal.