No. 679

First Circuit

----

## WHEAT ET AL. v. BAYER & THAYER HARDWOOD CO., INC.

----

(December 1, 1930. Opinion and Decree.)

----

Brock & Carter, of Franklinton, and Hawthorn & Williams, of Poplarville, Miss., attorneys for plaintiffs, appellants.

Ott & Johnson, of Franklinton, attorneys for defendant, appellee.

LeBLANC, J. Plaintiffs, W. H. Wheat, G. G. Wheat, Mrs. Viola Wheat Amacker, children of J. J. Wheat and of his wife, Susanah Holden, both deceased, and J. E. Wheat, the only heir of Pearce Wheat, a deceased brother of the plaintiffs, are suing defendant company for an undivided interest in a tract of land described in their petition, situated in the parish of Washington.

The land was originally acquired by Mrs. Susanah Wheat, mother of three of the plaintiffs, and grandmother of J. E. Wheat, from Solomon C. Smith in 1897. The sale was made to Mrs. Susanah Wheat, individually.

It is alleged by defendant that she had made the purchase with her paraphernal funds. The evidence shows that sheep which belonged to her husband, J. J. Wheat, had, during the existence of the community, been given for the land. Such being the proof, the acquisition was for the community. February, 1904, Mrs. Susanah Wheat sold the land to W. W. Seal and brothers for $1,500, $500 cash, and the balance on credit, which was paid by these vendees. Subsequently, in 1905, W. W. Seal and brothers sold to G. W. Seal, from whom defendant company derives its title, through the Cranor Lumber Company, the First National Bank of Gulfport, Miss., John H. Cassidy, and Daniel E. Sheridan.

As hereinabove stated, the land was purchased by Mrs. Susanah Wheat, became a community asset, and consequently one-half became the property of the children of J. J. Wheat, her husband. She sold the whole property to W. W. Seal and brothers after the death of her husband, and necessarily transferred to them only her undivided half therein, the ownership of the other half being vested in her children.

The defendant company, which traces its title to W. W. Seal and brothers, has no title to the undivided interest claimed by the plaintiffs, unless it be entitled thereto under the plea of prescription of ten years urged in bar of plaintiffs' demand, and which is the only defense.

A portion of the property originally sold by Solomon S. Smith to Mrs. Susanah Wheat was hilly and the other was swamp land. Some of it was in cultivation, and most all under fencing. It was in that condition when sold by Mrs. Susanah Wheat to W. W. Seal and brothers, and from them to G. W. Seal. The Seals did not cultivate the land, but kept most of it under fencing, including the swampy portion for pasturage. This inclosing of the land and grazing of cattle thereon constituted actual corporeal taking of the property, and possession animo domini which forms the basis of the ten years' prescription. Barrow v. Wilson, 38 La. Ann. 209; Chamberlain v. Abadie, 48 La. Ann. 587, 19 So. 574. The land was acquired in 1907 by the Cranor Lumber Company, in whose hands it was sold under sheriff's sale in 1913 to the First National Bank of Gulfport, in whose ownership it remained until February 28, 1920, when the bank transferred it to John H. Cassidy and Daniel E. Sheridan, who in 1924 sold it to defendant company.

As hereinabove stated, it was shown that actual physical possession had been taken by W. W. Seal and brothers when they bought from Mrs. Susanah Wheat, and which possession continued when held by

G. W. Seal, their vendee. It was shown that timber was cut off the land by the Cranor Lumber Company and by the bank after its purchase by them. This cutting of timber, though not possibly constituting by itself actual possession necessary for the basis of the ten years' prescription, evinced the intention of continuing the civil possession which had commenced by physical corporeal possession. This is all the law requires to support title by the prescription of ten years. Gilmore v. Frost-Johnson Lumber Co., 139 La. 354, 71 So. 536.

The good faith of the Seals in acquiring the property is questioned by the plaintiffs. There is no contention that the title to the Seals is defective in point of form, and is not translative of property. The complaint is grounded on circumstances or evidence dehors the instrument. The proof shows that the Seals consulted a Mr. Adams, justice of the peace, in reference to the title, in whom they apparently had entire confidence, before they bought. He approved the title and they were, no doubt, in good faith when they purchased, and honestly believed they were getting title from the true owner. They cannot be classed as owners in bad faith, who, the law says, assume the quality of owners or masters well knowing they have no title, etc. Civ. Code, art. 3452. See Land Development Company of Louisiana v. Schulz, 169 La. page 1, 124 So. 125. We find that they were purchasers and possessors in good faith, and so were the Cranor Lumber Company and the bank. The Seals having purchased in February, 1914, ten years thereafter, the bank, under its possession in good faith for that period of time and through its authors, had, in February, 1914, acquired ownership by virtue of the prescription of ten years.

The record shows, however, that in November, 1915, suit was filed by Elisa Jane Baugham, Nettie Rester, and Ada Boone, three sisters of three of the plaintiffs herein, and aunts of J. E. Wheat, to recover against the Bank of Gulfport an undivided interest in the land in contest by virtue of their right of inheritance from their deceased father J. J. Wheat. Service was accepted, and no further steps taken by the plaintiffs. In February, 1916, there appears a purported sale of these plaintiffs' interest to the bank.

At the time the suit was filed the bank could have successfully urged its ownership under the prescription of ten years, which had accrued in February, 1914, as before stated. Its title to the property had been perfected by the prescription of ten years under Civil Code, articles 3478 and 3479, and it could not be divested thereof, save by its own act. It did not have to give the plaintiffs in the suit filed in November, 1915, anything if it did not choose to do so, and the fact that it did in February, 1916, give to each of these plaintiffs a sum of money for an alleged transfer of their interests in the property which it already owned is a matter which need not be considered in determining the validity of its title. There is nothing which appears in the suit as an admission on its part of any weakness in the title. As a matter of fact, the only appearance it made was to accept service of citation through its counsel. As far as the record discloses, that suit is still pending on the plaintiffs' petition. Nothing was done by the bank by which any other heirs of J. J. Wheat could have been misled into believing that they had no rights in the property. Had the claims of the plaintiffs in that suit been put at issue by the bank, and had they

been judicially declared entitled to the interests they were seeking to recover in the property, it might be that a decree of judgment in their favor would have enured to the benefit of their co-heirs. But such a decree or judgment could not have been entered in view of the fact that the bank had already acquired a complete title to the property by prescription. Later on, in February, 1916, when the bank saw fit to give those plaintiffs in that suit a sum of money for a purported transfer of an undivided interest which they did not own, it was a matter strictly between those parties, which concerned them alone, and which certainly could not form the basis of any claim the heirs in the present suit might have.

The filing of that suit was not an interruption of prescription, because prescription had already accrued. If it be granted, for the sake of argument, that the act of the bank in taking title to the interests of the heirs, who were plaintiffs in that suit, in February, 1916, amounted to a renunciation of the prescription already acquired, and that such renunciation operated in favor of the other heirs, plaintiffs in this suit, it would seem that a new prescription began to run from the date of the purchase of those interests, and had again accrued by the sufficient lapse of ten years on the date the present plaintiffs filed their suit in February, 1929. Again, should the bank's act in that instance be construed as one which placed it in the position of a possessor in bad faith, it can avail the present plaintiffs nothing.

If there should be the least doubt of it before that time, certainly beginning with the title of Cranor Lumber Company in August, 1907, there was a possession which started in good faith, and that is all that is required to maintain the subsequent purchasers' right to the prescription, even though there should have been an intermediate possession in bad faith.

"It is sufficient if the possession has commenced in good faith; and if the possession should afterwards be held in bad faith, that shall not prevent the prescription." Civ. Code, art. 3482. See, also, Devall v. Choppin, 15 La. 566; Barrow v. Wilson, 38 La. Ann. 209; Bennett v. Calmes, 116 La. 598, 40 So. 911.

It is urged as an evidence of bad faith on the part of the defendant that the attorneys who filed the suit in behalf of some of the heirs of J. J. Wheat against the Bank of Gufport in 1915 are the same attorneys who examined and passed on the title for Cassidy and Sheridan, and also were generally employed by the defendant, and that therefore their knowledge of outstanding or adverse interests in the property is imputable to their clients. It is observed that more than four years elapsed between the time of the filing of the suit in 1915 and the date of the sale to Cassidy and Sheridan, and there is no evidence to show that these attorneys were consulted by the defendant as to this particular matter when it purchased the property in 1924. It strikes us that under the circumstances we would have to strain the doctrine of the imputation of knowledge of an agent to his principal, in order to charge this defendant with the knowledge of these attorneys, even if it be conceded that the latter were in bad faith, on the ground that they were generally employed as its attorneys.

As we have concluded that the First National Bank of Gulfport had a title to the whole property as far back as the year

1915, it follows that, when it sold to Cassidy and Sheridan on February 28, 1920, it conveyed to the latter a valid and legal title, which is the title that was acquired by defendant in this suit in good faith on January 12, 1924, and under which it took and held possession. By the terms of article 3493, Revised Civil Code, this defendant "is allowed to make the sum of possession necessary to prescribe, by adding to his own possession that of his author, in whatever manner he may have succeeded him, whether by an universal or particular, a lucrative or an onerous title."

This suit, as already noted, was filed in February, 1929, at which time defendant had acquired by prescription by possession for more than ten years under its title and that of its author.

The foregoing reasons apply to the demand of the plaintiffs W. W. Wheat, G. G. Wheat, and Mrs. Viola Wheat, wife of W. J. Amacker.

We will now address ourselves to the claim of J. E. Wheat, child of Pearce Wheat, who was a minor when his father died.

Article 3478, Civ. Code, was amended by Act No. 161 of 1920, p. 251, and Act No. 64 of 1924, p. 91. These amendatory acts say that:

"He who acquires an immovable in good faith and by a just title prescribes for it in ten years."

And provides for the running of prescription against interdicts, married women, and absentees. As to minors the acts declare that prescription shall apply and accrue against them in twenty-two years from the date of their birth.

In the case of Thomann v. Dutel, 158 La. 1026, 105 So. 52, the court, in passing on Act No. 161 of 1920, amending the article of the Code, above referred to, says that the clear purpose of this statute was to give stability to titles to real estate by permitting the prescription of ten years to run against minors during their minority, and by limiting the right of a minor to recover immovables to one year after arriving at full age, when such prescription had accrued at the time of his reaching his majority.

In this case, it is admitted that J. E. Wheat was born on July 18, 1905. Service of citation was made in this case February 18, 1929, and J. E. Wheat was therefore in his 24th year at that time, and prescription had accrued in favor of defendant company when he reached his majority.

The court below rendered judgment rejecting the demand of W. H. Wheat, G. G. Wheat, and Mrs. Viola Wheat Amacker. In that respect the judgment will be affirmed, but will be reversed in so far as it gave judgment in favor of J. E. Wheat for an undivided interest in the land, and in favor of defendant in warranty against John H. Cassidy and Daniel E. Sheridan.

It is therefore ordered, adjudged, and decreed that the judgment rejecting the demand of W. H. Wheat, G. G. Wheat, and Mrs. Viola Wheat Amacker be, and is hereby, affirmed.

It is further ordered and decreed that the judgments rendered in favor of J. E. Wheat against defendant company and in favor of the latter in warranty against John H. Cassidy and Daniel E. Sheridan be, and are hereby, reversed; and that the demand of J. E. Wheat be rejected, and that plaintiffs pay all costs of this suit.