106 So.2d 15 (1958)
Joseph HEBERT et al., Plaintiffs-Appellants,
v.
Caesar CHARGOIS, Defendant-Appellee.
No. 4610.
Court of Appeal of Louisiana, First Circuit.
October 8, 1958.
*16 Babineaux & Huval, Lafayette, for appellants.
McBride & Brewster, Lafayette, for appellee.
TATE, Judge.
This possessory action was instituted by the owners of a tract described as containing 35 arpents to secure their quiet possession thereof.[1] Defendant Chargois was charged with disturbing plaintiffs' possession of their land by, inter alia, erecting a fence upon it.
Plaintiffs' suit was dismissed by the trial court upon a holding that it did not comply with the statutory requirement that a possessory action be brought by the possessor of the land within a year of the time his possession was disturbed. Articles 49, 59, Code of Practice.
The principle question raised by this appeal is whether, as the District Court held, defendant disturbed plaintiffs' possession of their property by exercising exclusive grazing privileges thereupon without the consent of plaintiffs from 1953 (or earlier) up to and through the suit filed on December 2, 1955; or whether, as the plaintiffs contend, the first act by which defendant put them on notice of an adverse claim to the property, or by which defendant prevented them from enjoying the use thereof quietly, was the erection of a fence across a portion of their land in March of 1955, which precipitated the present suit which was thus timely filed in December of that year.
*17 It should at the outset be noted that, unlike a petitory action wherein title or ownership is at issue (Articles 43-45, C.P.), the possessory action involves only the right of one actually in posession of the land (irrespective of his title thereto) to be maintained in his possession against one disturbing same, subject to certain specified codal requirements (Articles 46-60, C.P.). That is, even though the plaintiffs have the better title and might prevail in a petitory action where title is at issue, they cannot prevail in this possessory action unless they meet the statutory requisites thereof, including undisturbed possession for more than one year prior to the defendant's disturbance of same. Article 49, C.P.
For convenience in discussion we are setting forth below a sketch of a portion of the survey depicting the property in dispute and the relevant fences.

*18 Plaintiffs' claim that their possession of the tract shown on the sketch as HIJLE5GH was interrupted by defendant's construction of the new fence IJL thereupon in March 1955, cutting off the disputed tract from the remainder of their land.
In brief recapitulation of the facts, plaintiffs' ancestor in title acquired in 1906 a tract described as containing 35 arpents in Lafayette Parish and, about 35 years before the present suit, he fenced same. At this time also, the "old fence" (ZX) was erected to separate the cultivated fields which formed the major portion of the tract, which lay west of the ZX fence, from the densely wooded and overgrown portion east thereof bordering on the coulee. This wooded easterly portion was thenceforth used as a pasture.
The preponderance of the evidence indicates that by the time defendant Chargois acquired in 1950 his tract bordering plaintiffs' on the latter's eastern end, any old fence line along the extreme eastern end (from H to G to 5 to E) had deteriorated and could mainly be ascertained through the remnants of a few old wires embedded in trees. However, it is uncontradicted that the old cross-fence from Z to X was still standing and was still maintained to keep cattle from entering the crop-area, as was another old fence running along the coulee westward from X used for the same purpose. The existence of an old fence eastward to the coulee from X through J is disputed and, as will be seen, is of substantial importance in the resolution of the legal issues here involved.
Defendant Chargois stated that the old fence from Z to X to J to the coulee was pointed out to him as his western boundary line and that, therefore following his acquisition in 1950 he commenced to graze his four head of cattle in the wooded and densely overgrown area enclosed by same. He further testified, corroborated by a neighbor, that he maintained and fixed said fences to prevent his cattle from straying into the cultivated fields north and west of this enclosed portion; also stating that he fixed the southern fence line (XJL) too.[2] The District Court found that this act of grazing cattle in the enclosed area, commencing more than one year before the suit was filed, was the initial disturbance of plaintiffs' possession and that, therefore, this suit by them was not timely filed. Vermilion Parish School Bd. v. Muller, La.App. 1 Cir., 92 So.2d 77.
The plaintiffs, however, claim that their possession was not disturbed until defendant erected the "new fence" (east of the old fence) at IJL in March of 1955. Defendant erected this fence within a week after plaintiffs' tenant plowed a portion of the land east of the old fence (ZX) and planted some Irish potatoes therein. (The fence cut off the eastern end of the potato patch, about 14 rows.)
It is forcefully argued that the fact that defendant fenced in only a portion of the *19 pasture which he claimed he owned in whole[3] is indicative of a lack of bona fide belief on his part that he had any right to have cattle on the land in Lafayette Parish across the coulee (which is the boundary between Lafayette and Vermilion Parishes), especially since his deed of title called only for land in Vermilion Parish. Whatever arguments as to defendant's good faith may be based upon this circumstance, our concern in the present litigation is solely whether the grazing of the cattle upon the property claimed by plaintiffs constituted, under the circumstances of this case, such a disturbance of plaintiffs' possession as to commence the tolling of the year within which the suit must be brought.
To show their own possession, plaintiffs point to their cultivation of the western portion of their tract and rely upon the legal principle that where a contiguous body of land is conveyed by a single deed, possession exercised on any part of that tract extends, constructively, to the limits of the land as called for in the deed itself (LSA-C.C. Arts. 3437, 3498; Rhodes v. Collier, 215 La. 754, 41 So.2d 669); further, in view of the uncontradicted testimony of an initial corporeal possession by plaintiffs' ancestor in title through the construction of a fence more than 35 years before the suit on the east side of the coulee along what is claimed to be the eastern boundary line of plaintiffs' property (HG5E), able counsel for plaintiffs rely upon the additional principle that as a matter of law, following the initial corporeal possession, possession continues constructively even if the corporeal detention ceases (LSA-C.C. Arts. 3429, 3431, 3442; Case v. Jeanerette Lumber & Shingle Co., La.App. 1 Cir., 79 So.2d 650, Daull v. Smith, La. App. 1 Cir., 51 So.2d 138), which constructive or civil possession thus preceded by physical possession is sufficient possession for purposes of maintaining a possessory action (Art. 49, C.P., as interpreted by Ellis v. Prevost, 19 La. 251 and the succeeding jurisprudence, see Hill v. Richey, 221 La. 402, 59 So.2d 434; Riseman, "The Possessory Action in Louisiana", 20 Tul.L.Rev. (1946) 524, 533-535.)
Conceding that through application of these doctrines the plaintiffs had undisturbed possession of the disputed premises in the absence of an adverse corporeal detention, nevertheless the question remains whether the continued and exclusive grazing of defendant's cattle in the wooded pasture east of the old fence (ZX) since at least 1953 constituted such a disturbance of plaintiffs' possession thereof or adverse corporeal detention that plaintiffs' possessory action instituted in 1955 was filed after the statutory year.
As a matter of factual opposition to the holding that the grazing of defendant's cattle thereupon disturbed plaintiffs' possession of the property, the latter contend that such grazing was with the consent of their tenant. As noted in footnote 2 above, we are unable to hold manifestly erroneous the trial court's contrary factual determination.
Plaintiffs further contend, factually, that there was no south fence from X eastward through J to the coulee, and that therefore the roaming of defendant's cattle in the unenclosed area west of the coulee and east of the old fence (XZ) (thus open to all the cattle of the neighborhood) could not disturb plaintiffs' possession of this unenclosed tract nor constitute possession on behalf of defendant.
If indeed the pasture used by defendant's cattle was unenclosed, the grazing of his cattle upon such unenclosed land to which the cattle of others had access and did graze did not constitute a disturbance of plaintiffs' constructive possession thereof. Cf., Harang v. Gheens Realty Co., 155 La. 68, 69, 94, 98 So. 760; Harang v. Golden Ranch Land & Drainage Co., 143 La. 982, *20 1009, 79 So. 768; Sessions v. Tensas River Planting Co., 142 La. 399, 76 So. 816; Beugnot v. New Orleans Land Co., 139 La. 687, 71 So. 947. In a possessory action, "The actual disturbance * * * must be accomplished by some actual deed or act that `brings home' to the `actual possessor,' realization that his dominion is being seriously challenged," Pittman v. Bourg, 179 La. 66, 74, 153 So. 22, 24. See, e. g., Jones v. Goss, 115 La. 926, 40 So. 357.
But although three witnesses for plaintiffs positively testified that, prior to the construction of the "new fence" from J to L by the defendant in 1955, there was no old fence running eastward from X to the coulee and thus forming a southerly enclosure for the pasture (Tr. 94, 96, 120); the defendant testified with equal positivity that there was such an old fence there which he had kept in repair to keep his cattle enclosed (Tr. 145, 146). The existence of this fence is corroborated by the testimony of both surveyors (Tr. 72, 129). The trial court (who in company with opposing counsel viewed the property) found that "the South line of the `old fence' continues from `X' to `J' and then to the West bank of the coulee" (Tr. 57), which factual determination we regard as therefore supported by a preponderance of the evidence.
Were it not for a circumstance to which we have not yet adverted, upon the factual determinations that defendant grazed his cattle in the pasture enclosed on three sides by the old fences[4] and on the fourth by the coulee[5] and that he fixed and maintained the enclosing fences, all without the consent of the plaintiffs who were the alleged possessors of the property, we might without too much difficulty hold that the continued and exclusive grazing of his cattle by defendant in this enclosed pasture along with the maintenance and repair of the enclosing fences constituted an actual corporeal taking and possession of the property by defendant. Wheat v. Baer & Thayer Hardwood Co., 1 Cir., 15 La.App. 306, 131 So. 307. If such is the case, then plaintiffs' civil possession was taken or usurped from them by defendant, LSA-C.C. Art. 3444; and having left in possession for one year without complaint the person evicting them, plaintiffs have lost their own possession for purposes of a possessory action and instead must resort to an action for the ownership of the property (i. e., a petitory suit), as specifically provided by LSA-C.C. Art. 3456.
The circumstance which prevents so facile a conclusion is the somewhat ambiguous testimony of plaintiffs' tenant's son to the apparent effect that a portion of the property east of the old fence was cleared of trees and underbrush in preparation for planting in 1954, which was the year before the potatoes were planted (which was immediately before defendant built the new fence in 1955). (Tr. 121.) This testimony is apparently corroborated by the positive testimony of defendant's witness Cain that he saw plaintiffs' tenant clearing the trees in the pasture on February 19 and 20, 1954 (Tr. 136), which he positively fixed by its relationship to the Maurice Bank robbery of February, 1954 (Tr. 137), and by defendant Chargois' testimony that plaintiffs' tenant started to clear the land in 1954 (Tr. 144, 146).[6]
If indeed plaintiffs' tenant in 1954 cleared of trees and underbrush and levelled a portion of the pasture east of the old fence, *21 defendants' claim of possession of the enclosed property through exclusive grazing thereupon from at least 1953 up through the erection of the fence in 1955 cannot be reconciled (at the least, as to the land physically cleared by the plaintiffs' tenant) with such an active corporeal possession through plaintiffs' tenant of a portion of the land; albeit, the trial court noted that the potato patch so cleared formed only a small portion of the so-called pasture east of the old fence. (Tr. 58.)
In finally affirming, despite the seriously troubling question so raised, the District Court's holding that defendant's exclusive and continued grazing of cattle upon the enclosed property and maintaining the enclosures thereof from at least 1953 constituted a disturbance of plaintiffs' possession (so that this possessory action was not timely when filed in 1955), we base our action ultimately upon our holding that the plaintiffs have not borne the burden of those instituting possessory actions to allege and prove, as essential elements thereof, their own uninterrupted and quiet possession for more than a year previous to the suit and also that the defendant's disturbance took place within the year of the suit. Articles 49, 53, C.P.; cf., Hill v. Richey, 221 La. 402, 59 So.2d 434. That is, we do not feel it to be essential to the determination of the present matter to decide whether or not the acts of defendant in the continued use of the disputed property for his own exclusive grazing constituted actual possession on his part when in the face of concurrent subsequent acts by plaintiffs' tenant evidencing contrary claims of possession on behalf of plaintiffs; for the codal articles regulating possessory actions do not require the adverse claimant to evict the possessor of possession, but permit the possessory action to be instituted also when the possession has been merely disturbed,[7] which indicates that the disturbance need not necessarily be adverse possession by the other part. Further, Article 51, C.P., defines a disturbance, inter alia, as any act which prevents the possessor of a real estate from enjoying the same quietly or which throws any obstacle in the way of that enjoyment; it does not define a disturbance as necessarily adverse possession on the part of the disturber.
Our holding that the plaintiffs have not borne their burden of proof with regard to the specified essential requirements of a possessory action is limited to the particular circumstances evidenced by the present record. Having in mind the nature of the land in question ("densely overgrown with trees, weeds, common briars and the notorious Cherokee hedge", Tr. 58), and that the former old fence at the extreme eastern edge of the disputed tract (HG5E) had been allowed to deteriorate so that the predecessor in defendant's title regarded the old cross-fence at XZ as his own western boundary, we think this to be a situation where in actual fact the land east of the old fence (XZ) was considered abandoned land, even though as a matter of law plaintiffs retained civil possession of it up to the limits of their former corporeal possession. Under such circumstances, the exercise of exclusive grazing privileges by defendant as attended by his actions in repairing and maintaining the enclosing fences constituted a disturbance of plaintiffs' claim to the right to the exclusive enjoyment of the property; whether or not in the face of interspersed acts by plaintiffs' tenant also evidencing possession on the *22 part of another party, the defendant's actions could constitute corporeal possession of the pasture east of the old fence.
Thus, with the interspersed acts of possession on the part of parties with opposing claims occurring over several years, we regard this to be one of those cases where both parties claim possession but where "the fact of possession be doubtful and uncertain" in the term of Art. 58, C.P., which term has been described as referring "to cases where both parties have done acts sufficient to gain actual possession, but the acts are so interspersed that between the two it is difficult to determine which has possession," 1 Wortham, Civil Procedure in Louisiana (1916), as quoted by Riseman, "The Possessory Action in Louisiana", 20 Tul.L.Rev. 524, 540 (1946); which commentator is further quoted as explaining this somewhat ambiguous codal article as follows: * * * the Article seems to contemplate that a petitory action will follow the judgment of the court refusing to maintain either in possession. * * *"
For the above and foregoing reasons, the judgment of the District Court is affirmed.
NOTES
[1] Joined with them as co-plaintiff was their tenant, and coupled with the prayer for quiet possession was a prayer for the award of damages.
[2] Plaintiffs' tenant, corroborated by two ear-witnesses, testified that he had in 1953 at the defendant's request given the latter permission to graze cattle in the portion of the land between the coulee and east of the old fence, since the tenant himself had no use for the property; providing the defendant maintain the fences and prevent the cattle from straying into the crops. This testimony, if accepted. would indicate that the grazing of cattle was not such an adverse act as put plaintiffs on notice that their possession was disturbed, but was instead an act on behalf of plaintiffs manifesting their own possession. Whitney National Bank of New Orleans v. Munch, La.App.Orl., 91 So.2d 144. However, specifically evaluating the credibility of these witnesses, the trial court accepted defendant's contrary testimony that no such incident occurred and that the defendant's cattle were grazed in the area in question without any consent given by or on behalf of the plaintiffs. Such a factual determination by the trier of fact, based upon an evaluation of the credibility of opposing witnesses, should not be disturbed upon review unless manifestly erroneous, Pierre v. Galloway, La.App. 1 Cir., 96 So.2d 916; which we are unable to say is the present case.
[3] On behalf of defendant it is claimed that he fenced in only that portion of land needed, with his other property on the east side of the coulee, to make up the 6 acres called for by his deed (Cf. Tr. 128); and, also, that due to a family relationship with plaintiffs, he abandoned a portion of the property rightfully his.
[4] That is, the three old fences at HIZ, ZX, and from Z to J to the coulee. The evidence reflects that the area from east of HG5 to the coulee constituted an effective barrier through an extremely thick and almost impenetrable growth of the cherokee bush.
[5] That the coulee might serve as an "enclosure" for purposes of adverse possession even without title is indicated by the holding in Hill v. Richey, 221 La. 402, 59 So.2d 434.
[6] In so testifying for defendant, both Cain and Chargois were of the impression that the fence was built in the year 1954 (Tr. 162, 146) (and not, as plaintiffs' witnesses testified, in 1955); the apparent purpose of this testimony being to prove that the erection of the fence as a disturbance of possession itself occurred more than a year previous to this suit, which was filed in December, 1955. Counsel for defendants-appellees does not on appeal raise this defense. The trial court specifically made no finding as to this conflict in the testimony. (Tr. 60.)
[7] Cf., e. g., C.P. Art. 46 describing the possessory action as one brought by a possessor to be maintained or restored to the possession "whether he has been evicted or disturbed" (italics ours), and C.P. Art. 53, stating that the possessor need prove in such action "that he has been either disturbed or evicted within the year previous to his suit." (Italics ours.)