412 So.2d 597 (1982)
Eula Thompson BARTLETT, et al.
v.
Stella CALHOUN, nee Herron.
No. 81-C-2933.
Supreme Court of Louisiana.
April 5, 1982.
*598 William P. Brumfield, Brumfield & Brumfield, Baton Rouge, for applicant.
George C. Murray, Jr., Calhoun, Murray & McLemore, Vidalia, for respondent.
BLANCHE, Justice.
This is a petitory action. The disputed property is a 300 acre tract of land located near the Black River in Catahoula Parish and owned at one time by W. C. Thompson and his wife. The Thompsons purportedly sold this tract to defendant, Stella Calhoun, on November 30, 1949. It appears from the record that thereafter the property was transferred by Ms. Calhoun to Grey Ramon Brown by act of sale dated December 10, 1949. Finally, in October of 1951, Ms. Calhoun re-purchased the property from Mr. Brown and it has remained in her possession since that date.
Plaintiffs, the alleged heirs of the Thompsons, filed this suit in 1977 seeking ownership and an accounting of revenue from the contested property. They challenge the validity of the November 30, 1949 act of sale, claiming that the Thompsons' signatures were forged.
Defendant moved for summary judgment, 404 So.2d 516 (La.App.), urging that because there was no issue as to a material fact, she was entitled to judgment as a matter of law. At the hearing on this motion, Ms. Calhoun contended that she had acquired the land in question by acquisitive prescription of ten years. Louisiana Civil Code article 3479, which sets forth the requisites for ten year acquisitive prescription, provides:
Art. 3479. To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
1. Good faith on the part of the possessor.
2. A title which shall be legal, and sufficient to transfer the property.
3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
4. And finally an object which may be acquired by prescription.
Plaintiffs argued that defendant, because of the alleged false signatures in the November *599 30, 1949 act of sale, was not in good faith. Defendant, in response to plaintiff's claim, urged that, even if she was in bad faith when she originally acquired the tract, she could take advantage of Grey Brown's (her transferee's) good faith, tack her subsequent possession to his, and own the property after the passage of ten years.
Both lower courts were of the opinion that the holding of Liuzza v. Heirs of Nunzio, 241 So.2d 277 (La.App. 5th Cir. 1970) was controlling in the instant case. When confronted with the identical issue, the court in Liuzza came to the following conclusion:
In the very early case of Devall v. Choppin, 15 La. 566 (1840) the Supreme Court enunciated the proposition that if a successor showed that one of his authors was a possessor in good faith and had all the necessary ingredients for ten year prescription, he could acquire by such prescription even though he as well as an intermediary author possessed in bad faith. This interpretation has become the rule in our jurisprudence.
Accordingly, the trial and appellate courts held that, because Ms. Calhoun could rely on Grey Brown's good faith, it did not matter whether defendant was or was not herself in good faith. Concluding that plaintiff's challenge to Ms. Calhoun's plea of prescription did not bear on a material fact, summary judgment was rendered in favor of defendant. C.C.P. art. 966.
We granted writs to determine whether the lower courts' conclusion that defendant's status as a good or bad faith possessor was not a material fact was proper. In so doing, we re-evaluate the soundness of the jurisprudential rule which permits a bad faith possessor to tack his possession to that of his good faith author in order to acquire ownership by acquisitive prescription of ten years.
"Tacking", or the "joining of possessors", allows the present possessor to count, besides his own possession, that of his predecessor in order to prescribe. M. Planiol, Civil Law Treatise, Part 2, Sec. 2673 (12th Ed. La.St.L.Inst. trans. 1959). As a result, it is not necessary that the same individual possess the immovable during the entire period required for prescription. This joining, or tacking, of possessions is authorized by C.C. art. 3493, which provides:
Art. 3493. The possessor is allowed to make the sum of possession necessary to prescribe, by adding to his own possession that of his author, in whatever manner he may have succeeded him, whether by an universal or particular, a lucrative or an onerous title.
By the word "author" this codal provision contemplates the person from whom another derives his right, whether by universal title or by particular title.[1] C.C. art. 3494. Thus, it is imperative that a juridical link exist in order for a successor to acquire his predecessor's prescriptive rights. Though art. 3493 does not contain a separate provision for the universal successor as distinguished from the successor by particular title, we believe that a differentiation must exist due to the nature of these types of transfers.
The French commentators agree that the universal successor continues the deceased's possession and does not commence a new possession. 2 Aubry & Rau, Droit Civil Francais Nos. 218 (7th Ed. Esmein 1961), 2 Civil Law Translations at 365 (1966); Baudry-L cantinerie & Tissier, Traite' Theoreque et Pratique de Droit Civil, Prescription Nos. 346, 347 (1924), 5 Civil Law Translations at 181 (La.St.L.Inst. trans. 1972). See also Griffin v. Blanc, 12 La.Ann. 5 (La.1857). As noted by Planiol:
The universal successor merely continues the deceased's possession (no. 2661). He succeeds to all of the latter's obligations as well as rights. It is thus not a *600 new possession that begins but it is the deceased's possession that is transmitted to his heirs, with its virtues and its faults. Planiol, supra, Sec. 2674.
Because the universal successor's possession is nothing more than a continuation of the deceased's possession, he is bound by his author's good or bad faith and is powerless to alter the prescriptive rights transmitted to him. Aubry & Rau, Sec. 218, supra; Planiol, Sec. 2674, supra.
For instance, the decedent possessed with just title and in good faith, an immovable belonging to another. He was thus in the process of prescribing ten to twenty years. His possession continues in favor of his heir with the same characteristics and the prescription will be completed at the end of ten or twenty years, commencing with the date when the decedent entered in possession. It is irrelevant that the heir is in bad faith at the moment when the possession is transferred to him.
The effect of vices in the possession will be always the same as if the possession continued for the benefit of the decedent. It follows that vices incurable with respect to the decedent can not be cured by the heir. For instance, if the decedent was in bad faith from the beginning of his possession, his heir can prescribe only by thirty years although he is personally in good faith. Baudry-Lacantinerie, Sec. 348, supra.
Thus, it is evident that the provisions of C.C. art. 3482,[2] which permit prescription to accrue after ten years as long as the possession is commenced in good faith, envisions only one possession and applies when property is transferred to a universal successor. Baudry-Lacantinerie, Sec. 351, supra. As far as the universal successor is concerned, it would be more accurate to leave out tacking and its connotations and describe the transaction as a mandatory substitution. Comment, "Tacking of Possession for Acquisitive Prescription", 8 La. L.Rev. 105 at 107-110 (1948).
Contrary to the universal successor, an individual who acquires by particular title commences a new possession which is separate and distinct from his author's possession. Aubry & Rau, Sec. 218, supra.
... This type of successor commences a new possession, completely distinct from that of his grantor. Here we have two mutually independent possessions. Baudry-Lacantinerie, Sec. 350, supra.
Though the particular successor can cumulate his and his author's possessions, both must have all the statutory characteristics and conditions required for the completion of prescription. Domat, The Civil Law in its Natural Order, Sec. 2226 (2nd Ed., Cushing trans. 1861); Aubry & Rau, Sec. 218, supra; Baudry-Lacantinerie, Sec. 350, supra. The implications of this limitation on a particular successor's right to tack are fully explained by Planiol:
Assuming that the preceding possessor was himself in the process of prescribing, several combinations may arise. If both of them were entitled to prescribe within from ten to twenty years, the new possessor would certainly have a right to consolidate the two possessions. The same result would obtain if neither of them was entitled to prescribe within these terms. In both cases, the thirty year period would be the only one available. In these two cases, the two successive possessions of the successor and of his author may be added together. They are of the same nature and of the same quality.
But if it be assumed that the two successive possessors are not in the same position, from the standpoint of prescriptionbut one of them have a just title and being in good faithcomplications arise. They are solved by this very simple rule: The years that apply to the thirty years prescription, which requires neither just title nor good faith, cannot be used in completing the prescription running from ten to twenty years. The latter prescription requires that both conditions *601 exist. But, on the contrary, the years that have run in connection with this favored prescription may be counted in computing the thirty years prescription. All that it requires is possession.
EXAMPLES: Where the vendor is a possessor in good faith, and the purchaser is in bad faith. If the ten years prescription has not run in favor of the vendor, at the time of the sale, the purchaser cannot prescribe except upon the basis of thirty years, but he can count his author's years of possession.
Where the vendor was in bad faith but the purchaser in good faith, the latter can prescribe upon the basis of ten years but he cannot avail himself of his author's possession, because it applied solely to the thirty year period. In such a contingency, it might sometimes pay the purchaser to abandon his claim to the prescription of ten years in order to take advantage of the thirty years prescriptive period commenced by his author. This interest will come into play whenever the prescription has less than ten years to run before being completed. There is no doubt about the fact that he can then join his possession to that of his author to complete the thirty years. If the latter's possession would have applied to the shortened and privileged prescription it will a fortiori apply to the general prescription of thirty years.
Planiol, Sec. 2676, 2677, supra.
It is our opinion that this statement properly explains the restraints placed on a successor's right to join his possession with his author's possession for purposes of acquisitive prescription. Accordingly, any language to the contrary in previous opinions of this Court or of the courts of appeal must be disregarded. E.g. see Liuzza v. Heirs of Nunzio, supra; Devall v. Choppin, 15 La. 566 (1840); Liquidators of Prudential Savings and Homestead Soc. v. Langermann, 156 La. 76, 100 So. 55 (1924); Brewster v. Hewes, 113 La. 45, 36 So. 883 (1904); Wheat v. Bayer and Thayer Hardwood Co. Inc., 15 La.App. 306, 131 So. 307 (1930); Vance v. Ellerbe, 150 La. 388, 90 So. 735 (1922); Jackson v. D'Aubin, 338 So.2d 575 (La.1976).
Applying this civilian principle to the present case, it is evident that Ms. Calhoun's status as a possessor is essential to her claim of acquisitive prescription of ten years. Defendant, as a purchaser, is a successor by particular title. If she was in good faith when she re-acquired the property in 1951, she could cumulate the requisite ten years on her own, or tack her possession to that of her good faith author. On the other hand, if defendant was in bad faith she could not avail herself of Grey Brown's good faith and become owner of the land in question after the passage of ten years. Though she could still tack her possession to that of her author's for thirty year acquisitive prescription, the institution of this suit in 1977 would interrupt her possession and preclude her claim of ownership. See C.C. art. 3518.
However, both lower courts were of the opinion that defendant's status as a possessor did not present a material fact. As a result, it was never determined whether the pleadings, depositions, admissions of fact or affidavits established a genuine issue as to this material fact. This determination is to be made on remand.
Accordingly, the summary judgment rendered in defendant's favor is reversed, and the case is remanded to the district court for further proceedings in accordance with law.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
La.Civ.Code art. 3479 sets forth the conditions that must concur to acquire the ownership of immovables by acquisitive prescription of ten years. One of these conditions is "[g]ood faith on the part of the possessor." Article 3482 provides that "if the possession has commenced in good faith," subsequent bad faith "shall not prevent the prescription." Finally, art. 3493 provides that the "possessor is allowed to make the sum of possession necessary to *602 prescribe, by adding to his own possession that of his author, in whatever manner he may have succeeded him, whether by an universal or particular ... title."
Under the above articles, prescription accrues after ten years as long as possession commenced in good faith. Subsequent bad faith is of no moment. A possessor may add to his own possession that of his author in title to make the sum of possession necessary to prescribe. Hence, a bad faith possessor is permitted to "tack" his possession to that of his good faith author in title to acquire ownership by acquisitive prescription of ten years. This has been the law of this state since Devall v. Choppin, 15 La. 566 (1840). I see no compelling reason to change it at this time.
In the instant case, Ms. Calhoun originally acquired the property on November 30, 1949. It is alleged that she was in bad faith at the time of this sale. However, Grey Brown acquired the property in good faith by act of sale from Ms. Calhoun on December 10, 1949. In October of 1951, Ms. Calhoun repurchased the property from Mr. Brown and it has remained in her possession since that date. Since possession must be commenced in good faith, the prescription of ten years began to run when Mr. Brown acquired the property in good faith and by just title on December 10, 1949. As a subsequent possessor of the property, Ms. Calhoun is allowed to "tack" her possession to that of her author in title, Mr. Brown. Accordingly, Ms. Calhoun became the owner of the property by the acquisitive prescription of ten year on December 10, 1959. Hence, the trial judge correctly granted defendant's motion for summary judgment. The court of appeal was correct in affirming that judgment. I would affirm. Accordingly, I respectfully dissent.
NOTES
[1] C.C. art. 3556(28) provides in pertinent part:

There are in law two sorts of successors: the successor by universal title, such as the heir, the universal legatee, and the legatee by universal title; and the successor by particular title, such as the buyer, donee or legatee of particular things, the transferee.
[2] Art. 3482. It is sufficient if the possession has commenced in good faith; and if the possession should afterwards be held in bad faith, that shall not prevent the prescription.