469 So.2d 1022 (1985)
SUCCESSION OF BURAT (BURAS)
v.
The BOARD OF LEVEE COMMISSIONERS, et al.
No. CA 1518.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 1985.
Rehearing Denied May 29, 1985.
*1024 John H. Brooks, Peter C. Ladart, Gretna, for appellants.
Richard J. McGinity, Wilson S. Shirley, Jr., M. Hampton Carver, Frank A. Tessier, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, John E. Bailey, David R. Stevenson, Houston, Tex., J. Wayne Anderson, Stephen G. Lindsay, David A. Kerstein, New Orleans, Donald Puckett, Baton Rouge, for appellees.
Before REDMANN, C.J., and KLEES and CIACCIO, JJ.
CIACCIO, Judge.
Plaintiffs, heirs of Hubert Burat, filed this appeal from an adverse judgment of the district court which sustained the defendant's exception of thirty (30) years acquisitive prescription. Defendants answer the appeal and request that this Court amend the lower court judgment to recognize its rights under their exception of ten (10) years acquisitive prescription and their exception of peremption based upon tax sales. We affirm the judgment of the district court.
The Succession of Hubert Burat (Buras) brought this petitory action to recover sections 29 through 32 of Township 19 south, range 16 east, which land is located opposite Buras, Louisiana, on the left descending bank of the Mississippi River in Plaquemines Parish. Additionally, the suit seeks an accounting and damages for wrongful possession. In response to the suit, defendants, the Board of Levee Commissioners of the Orleans Levee District, Chevron U.S.A. Inc., Chevron Pipe Line Company, Gulf Refining Company, Louisiana Power and Light Company, Shell Oil Company, Estate of William G. Helis and Helis Enterprises, Inc., filed exceptions of peremption and ten and thirty years acquisitive prescription.
The facts of this case are as follows:
*1025 During the reign of the Spanish Sovereign and prior to the Louisiana Purchase, Hubert Burat settled the tract of land in question, which was located some sixty miles below New Orleans on the east bank of the Mississippi River. In 1803, the Louisiana Purchase incorporated this land into the United States, pursuant to its purchase of Louisiana from the Republic of France.
In 1836, an erroneous federally commissioned survey showed Burat's four sections of land to be other than where they were actually located and it also showed the sections actually settled and occupied by him to be vacant. The error resulted in two lines of title, as other persons filed claim against this land which the survey showed as vacant.
Burat filed a private claim to Sections 29 through 32 of Township 19 south, Range 16 east, which claim was assigned Number 60. In 1837 a federal land register and recorder included Burat's corrected claim in his report to Congress. In 1842 Congress confirmed Burat's ownership of the land by a special legislative act (July 6, 1842, 5 Stat. 491). On October 24, 1885 the Burat claim was surveyed and the plat authenticated. On October 30, 1885 the Registrar and Receiver issued a patent certificate (No. 166) to the Burat tract. In 1972 the United States issued a patent for the land to Hubert Burat, his heirs and assigns. (Patent No. 1242435 of May 24, 1972, recorded COB 380, folio 351).
In the interim, squatters and persons purporting to have ownership from an erroneous claim of title took turns in occupying the land. In 1838 and 1839 patents were issued to these claimants. Their interest was assigned to Andrew Hodge, Jr. Hodge sold section 30 of the land to Joseph and Matilda Cavalier, by deed dated August 12, 1841 which was recorded September 6, 1948. He sold section 31 to William and Mary Jansen, by deed dated August 12, 1841 and the deed was recorded December 10, 1942. Following his death, Hodge's legal representatives, in 1861, reconveyed, Section 29 and 32 back to the United States. In turn they received a refund of the monies Hodge had paid for the property. Hodge quitclaim to the United States any rights or title he held in Sections 30 and 31 of the tract.
In 1924 through 1926, the Levee Board of the Orleans Levee District acquired the title to this land when it expropriated the property for the Bohemia Spillway. The remaining defendants were granted leasehold interests from the Levee Board.
The issues presented are: (1) What was the nature of Burat's claim and when did his title to this land come into existence? (2) Can the Levee Board acquire title by prescription and if so, is such acquisition unconstitutional? (3) Did the trial court err in finding that the Levee Board acquired ownership of this land by thirty years acquisitive prescription.

Federal Question:

Burat Title
The plaintiffs contend that the Burat heirs did not acquire title to the subject tract of land until the United States issued a patent to them in 1972 and it is from this date that prescription began to run. They contend that the trial court erred in finding that the Burat heirs received title in 1842 when their claim was confirmed by the Land Department of the federal government. According to the plaintiffs, title could not have passed in 1842 because the United States did not have title at that time. Thus, the plaintiffs reason that the federal government acquired title when it bought back the title from Hodge to sections 29 and 32 of this tract of land in 1861. Further, with regard to sections 30 and 31 plaintiff contends there existed a confirmed claim but it was not satisfied until 1972 when the patent was issued. It was then, plaintiffs contend, that title passed to them and prescription began to run.

Law
The nature of a settler's claim determines when title to land passes to the claimant. Title to land which rested upon claims which had been perfected and complete, according to the laws of the sovereign, prior to acquisition of the territory by *1026 the United States did not vest title in the United States, and did not constitute conveyances by the United States. See: Nixon v. Houillon, 20 La.Ann. 515 (1868).
Title to land which relied upon claims which were not perfected and which were incomplete on the date of the Louisiana purchase vested equitable rights with the claimant, such that title vested, at the confirmation of the claim. (Title by possession) Breaux v. Lefort, 209 La. 506, 24 So.2d 879 (1946). (Land grants) Jopling v. Chachere, 107 La. 522, 32 So. 243 (1902); See: Langdeau v. Hanes, 88 U.S. 521, 21 Wall. 521 (1875).
Hubert Burat filed his private land claim in 1837 founded upon his occupancy and possession prior to 1803. This claim No. 60 was reported favorably to Congress for confirmation on November 22, 1837. The claim was confirmed in 1842. Act, July 6, 1842 (5 Stat. 491).
The trial court correctly concluded that title passed from the United States to Hubert Burat, on Sections 29, 30, 31 and 32 of this tract of land, in 1842 when this private claim was confirmed and not 1972 as claimed by plaintiffs. That is, Burat's claim arose from possession and occupancy of the land while under the reign of the foreign sovereign. The claim was incomplete when the land was ceded to the United States. This claimant possessed an equitable right which, upon confirmation, vested title in Burat. Thus we also agree with the conclusion reached by the trial court that the subsequent patent which was issued to Burat in 1972 was "only documentary evidence of that title." Moreover, since a vested right to a patent of public lands is treated as a patent in fact issued, the patent, when issued, relates back to the filing of the entry. See: Steinspring v. Bennett, 16 La.Ann. 201 (1861). See: State of Wyoming v. United States, 255 U.S. 489, 41 S.Ct. 393, 65 L.Ed. 742 (1921).

Hodge Patent
The United States held only naked legal title to this land at the time that it issued the Andrew Hodge patent. The full equitable title rested with Hubert Burat, who had performed all of the requirements necessary for the patent to be issued to him. Thus, the United States did not possess the authority to pass title to Hodge in 1838 and 1839. See: Barton's Executrix v. Hempkin, 19 La. 510 (La., 1841). The patent which Andrew Hodge obtained through error was therefore void. See: Lott v. Prudhomme, 3 Rob. 293 (La., 1842), McGill v. McGill, 4 La.Ann. 262 (La., 1849), Proctor v. Painter, 15 F.2d 974 (9th Cir. 1926).
Plaintiff argues that Hodge was a good faith purchaser and his rights being plenary, they were immune from attack.
The general rule is that a patent to land which has been previously sold granted or reserved is void. Gould and Tuker, Title XXXIIThe Public LandsChapter IV pp. 527-528. However, an exception exists when the title to the land has passed to a bona fide purchaser without notice. Gould and Tuker, supra.
We reject the plaintiff's contention that Hodge was a bona fide purchaser whose rights in title were immune from challenge. A bona fide purchaser is one who purchases property for value, without any notice of defect.
With regard to Sections 29 and 32 of the tract of land, the Hodge heirs acknowledged the defect in their title when they applied to Secretary of the Treasury for a refund. The request for refund contained the following language:
Whereas, the Act of Congress passed on the 12th day of January 1825 entitled an act authorizing repayment of land erroneously sold by the United States provides that whenever the sale of a tract of land by the United States is void for want of title thereto in the United States or from any other cause whatever, the money paid on the same will be refunded by the Secretary of the Treasury. And, whereas, the lots or sections herein below described ... are covered *1027 ... Sections 29 and 32 of Township 19S of Range 16E by the private claim of Hubert Burat, Certificate No. 60 ... [the instrument also describes other tracts of land and with respect to each such tract sets out the title which was deemed to be superior to the title to such land purchased by Hodge]. Now Know Ye that for and in consideration of the sum of ..., I, H.F. Deblieux, ... hereby sign, transfer, relinquish and surrender to the United States all our rights, title, interest and claim of, in and to the land hereinabove described. (emphasis added).
Moreover, assuming arguendo that Hodge was initially a purchaser in good faith, only he, his heirs or transferees in title, if any, could claim the benefit of that status. Hodge's heirs abandoned any such claim by executing the quitclaim to the Government on Sections 29 and 32 of the tract. As between Hodge's heirs and the United States government, the initial transaction was void ab initio and of no legal effect whatsoever, thus returning the parties to their original status.
This quitclaim did not create a new legal title in the United States, but only served to remove any cloud that may have been placed on the equitable title held by Hubert Burat. Absent a new legal title in the United States, no interruption of prescription took place. That is, since the title was in Burat since 1842, prescription began to run from that date and contrary to the plaintiff's contention, prescription was not interrupted because of retention of any real rights in the United States Government.
Furthermore, the Hubert Burat heirs are not transferees in title of Hodge (on Sections 29 and 32) nor are they transferees of Champagne and Jansen (on Sections 30 and 31). They therefore have no standing to assert their claim on behalf of Hodge or his estate nor on behalf of any transferees or heirs of Champagne and Jansen.

Prescription

Constitutional Issue
Plaintiffs contend that the statute which enabled the Levee Board to acquire this tract of land did not provide that it could deprive citizens of their title without compensation. Thus, they reason that since the Burats did not receive compensation for the land that the Levee Board's actions constitute a deprivation of property without due process of law. U.S. Const, 14 Amend. We disagree.
The Levee Board did purchase or expropriate these lands before taking possession of them. The Burats were not the recipients of the compensation, because as correctly pointed out by the trial court:
"[T]he title of the Burats to all the tracts involved in this suit had been divested long before the Levee Board took possession of the property."
Accordingly, there was no deprivation of property without due process of law.
The plaintiffs next argue that, since the Levee Board may prescribe against citizens but citizens are not allowed to prescribe against the Levee Board, this policy violates the equal protection clause of the constitution. U.S. Const., 14 Amend.; La. Const. Art. 1 Sec. 3. R.S. 38:295.
The United States Supreme Court and this state's appellate courts have sanctioned such a policy as being "founded upon the public good and [for] the protection and preservation of the public interest." Stanley v. Schwalby, 147 U.S. 508 at 517, 13 S.Ct. 416 at 421, 37 L.Ed. 255 (1893). Lincoln Parish School Board v. Ruston College, 162 So.2d 419 (La.App. 2nd Cir.1964).
Distinctions between classes of individuals or persons are permissible if they are reasonable, and not arbitrary, but rest upon some ground of difference which has a rational relationship to the object of the classification. See: Detraz v. Fontana, 416 So.2d 1291 (La., 1982).
Since there exists a rational basis for distinguishing between the Levee Board and private individuals, with regard to acquisitive prescription, such a policy *1028 does not constitute a constitutional denial of equal protection.

Acquisitive Prescription
The trial court found that the defendants had clearly and adequately demonstrated proof of thirty years acquisitive prescription. The court reasoned as follows:
"This court adopts as its conclusion the following expressions in defendants' brief. These conclusions are fully supported by the records which this court heard from the stand and perused from the record.
The Levee Board established sufficient possession by itself and its lessees for a thirty year prescriptive title within boundaries and a ten and thirty year prescriptive title under the deeds by which it and its predecessors hold. Possession of the Levee Board's predecessors in title was sufficiently proved. * *.
* * * * * *
* * * [C]onsidering the nature of the terrain, the trapping, cattle grazing, and myriad other acts of possession of this property show actual corporeal possession over all of it. For this type of land, possession could hardly be shown more conclusively.
* * * The land involved consists of several contiguous tracts. As to a part of each of these individual tracts, defendants have shown possession by the predecessors in title of the Levee Board. Additionally, as to each tract of land involved in this suit, defendants have shown possession by the Levee Board of its leasees for at least thirty years prior to commencement of plaintiff's suit.
* * * The possession of a part constitutes constructive possession of the whole of each respective tract, which tracts in the aggregate constitute all of the land involved in this suit."
The plaintiffs contend that defendants have failed to prove thirty year acquisitive prescription based upon possession under title. We disagree.
The ownership of an immovable is prescribed for by thirty years, without need for title or possession of good faith. C.C.Art. 3499 (1870). However, all the rules governing prescription under good faith possession are applicable to prescription under bad faith possession except those which are contrary or incompatible. C.C. Art. 3505 (1870). In the case of thirty year prescription founded upon just title, the possessor's good faith is not a consideration. C.C. Art. 3475 (1870) (now, C.C. Art. 3486). Rather, the possessor must only show just title and thirty years possession. In the case of thirty years possession plus title, corporeal possession of a part of the immovable shall be deemed to be constructive possession of the whole within the limits of the title. C.C. Art. 3498 (1870). See also: C.C. Art. 3426 (1982), comment (d), and Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952). Moreover, in such possession cases, the predecessor's possession may be tacked in order to fulfill the thirty years possession of the current owner. C.C. Arts. 3493-3495 (1870) (now C.C. Arts. 3441 and 3442). See: Bartlett v. Calhoun, 412 So.2d 597 (La., 1982).
The plaintiffs allege that defendants cannot rely upon constructive possession of the land in order to establish ownership by thirty years possession. They reason that the Levee Board acquired the land by several different deeds, each of which described a different tract. Thus, plaintiffs cite Screen v. Trainor for authority. 172 La. 51, 133 So. 359 (1931).
The Screen decision supra does not apply to the facts of this case. That decision involved a large tract of land which was acquired piecemeal by different deeds, thus, the actual possession was only deemed to extend to the limits of the deed covering the tract possessed. Accordingly the facts of that case are distinguishable from this case. In this case the trial judge found that the defendants proved possession of each tract of the land by the Levee Board and by its predecessors and that finding was clearly supported by the record.
*1029 Plaintiffs contend that defendants, being bad faith possessors, cannot benefit from their predecessor's good faith possession. The plaintiffs rely upon Bartlett v. Calhoun for this position. 412 So.2d 597 (La., 1982). The Bartlett decision, supra, does not prevent such taking of possession in order to complete a thirty year prescriptive period. Thus Bartlett, supra, is inapposite.
Plaintiffs allege that the defendant, Levee Board, failed to prove "just title". They contend that the inaccuracies of the Brodtman Plat, which was utilized to establish title, makes the title fatally defective. A review of the record indicates that various deeds, maps and abstracts of the land were utilized, in conjunction with expert testimony, to establish the Levee Board's just title. An expert for the defendant testified that the title was clearly established, even without the inclusion of the defective Brodtman plat. The trial court apparently found that just title had been proved and this finding will not be disturbed, as it is supported by the record.
In conclusion, plaintiffs allege that possession cannot be inferred from title. We agree. In this case, however, for the reasons stated, we find that defendant proved possession, as well as title.
Since we conclude that the trial court correctly found that the defendants had proven thirty years prescriptive title, we do not address the issues of thirty year prescription within boundaries or whether they held a ten year prescriptive title or established peremptive rights as a result of tax sales.
For the reasons assigned the judgment of the district court is affirmed at appellant's cost.
AFFIRMED.
REDMANN, C.J., concurs.
REDMANN, Chief Judge, concurring.
I agree that Burat's title was "perfected" by the 1842 federal confirmation. The mistaken Hodge patent was but a trifling cloud on his title.
I prefer to base the Board's 30-year acquisitive prescription on its own possession. It incorporated the entire land (not some corner of it) into, and within the physical boundaries of, a spillway. That was "public and unequivocal" (La.C.C. 3500) detention of and exercise of dominion over the land, corporeal possession sufficient for acquisitive prescription.